## Richmond.

## TROTH v. ROBERTSON, COMMISSIONER.

### Nevember 22d, 1883.

1. CONSTRUCTION OF STATUTES.—Code 1873, ch. 112, § 20, should be construed as remedial and liberally, and therein the word "estate" is held to be used in its most extensive sense, and as meaning the property, or thing, given by the deed or will, and not merely the interest therein; so as to promote the policy of the legislature, which was to remove those fetters upon alienation which contingent limitations more or less tend to fasten.

2. IDEM—*Jurisdiction to sell contingent estates.*—Under that statute the circuit courts have jurisdiction to sell and make good title to real estate devised to one for life, remainder to his children or descendants, if any, at his death, and if none, then remainder to the children or descendants of another, if any such be living at former's death.

Error to judgment of circuit court of Prince William county, rendered 12th October, 1880, in action of debt on bonds executed by the defendants, Paul Hillman Troth and Edward M. Willis, for the purchase money of a tract of land sold under a decree of said court in a suit entitled, *"Robertson* v. *Robertson and als.,"* which had been instituted under acts 1857–8, p. 46 (Code 1873, ch. 112, § 20), to sell land devised by the will of Henry Fairfax, upon contingent limitations. The said Troth defended said action on the ground that the sale made under the decree of the said court was void, for want of jurisdiction in the court to make it. At the trial, the existence of such jurisdiction was the point of the controversy, and mainly turned upon the proper construction of the word "estate," as used in that statute. The said Troth moved the court to instruct the jury

that the court had no jurisdiction to decree the sale in the suit of *Robertson* v. *Robertson and als.*, and that the sale made pursuant to it was a void sale, and that there could be no recovery on the bonds given for the purchase money of said sale. The court refused to give the instruction, but instructed the jury that the sale was valid, and defendant excepted. There was a verdict for the plaintiff, and judgment accordingly. To which judgment a writ of error was allowed by one of the judges of this court. Opinion states the remaining facts.

*S. Ferguson Beach*, for the plaintiff in error.

*Payne, Meredith, Stuart* and *Kean*, for defendant in error.

LACY, J., delivered the opinion of the court.

The facts in this case necessary to be stated are as follows: Henry Fairfax, a resident of Prince William county, departed this life, having first made and published his last will and testament, dated the 21st day of September, 1840, which was duly admitted to probate in the county court of Prince William on the 1st day of November, 1847.

Under the ninth clause of the said will, the testator devised to two of his children, Martha L. and John W. Fairfax, certain real estate situated in the said county, to have and to hold for and during their lives and no longer; the remainder in said estates, after the death of Martha L. and John W. Fairfax, was given to their issue, if any living at the time of their deaths, each one's estate to go to such child's issue, if any, to be divided amongst such issue as they would take by inheritance; but if Martha L. should die without issue living at the time of her death, then her share to go to the children of John W., if any, to be equally

divided among them. If John W. should die without issue, then in like manner his share was to go to the issue, if any, of Martha L., to be equally divided between them.

On the 5th day of April, 1858, the said Martha L. Fairfax, having intermarried with Thomas B. Robertson, the said Thomas B. Robertson and his said wife, by her next friend, brought suit in the circuit court of Prince William against their infant children, and against the said John W. Fairfax and his infant children, praying for a sale of the share of the said Martha L. Robertson in the real estate devised under the will of her late father, and limited as stated above; alleging that under the said will the said Martha L. had only a life estate in the said real estate; that her portion contained about one thousand acres lying upon the Potomac river; that owing to the situation of the land, the unsettled condition of the times, and the distance of their residence, the said land could not be cultivated by them to advantage, and praying for a sale in order to promote the welfare of all persons interested in the property, either directly or contingently; that the court would decree a sale of the absolute property in the land; and that the proceeds of the same might be held under the decree of the court for the use and benefit of the person holding the estate, subject to the limitations prescribed in the will of the said Henry Fairfax in relation to the said tract of land.

The cause progressed, until at the October term, 1869, a decree was entered appointing the said Thomas B. Robertson a special commissioner to make sale of the said land at private sale for the sum of $33,000—$3,000 to be paid January 1st, 1870; and on the first day of January of each succeeding year thereafter for ten years the sum of $3,000, with interest thereon from the first day of January, 1870, payable semi-annually, the deferred payments to be secured by bonds to the amount of $10,000,

secured by deed of trust on real estate unencumbered of such value, and title to be retained to the Fairfax lands until full payment, and then deed to be made.

Sale was effected, as had been no doubt previously arranged, to P. Hillman Troth and Edward M. Willis; the $3,000 paid in cash January 1st, 1870, and ten bonds executed for $3,000 each, payable as the decree directed. Subsequently, P. Hillman Troth assigned to the said Edward M. Willis his interest in the purchase. And on the 9th day of November, 1876, the said Edward M. Willis filed his petition in the cause, setting forth the assignment to him by said Troth of all of the interest of the said Troth in the said purchase; that he had been for several years in possession of the said real estate; that he had expended large sums of money in buildings and improvements on the said land; and was extremely desirous of completing his purchase, provided that a good title could be made him, but that he had been advised to object to the title which the circuit court of Alexandria county could make him, to which the cause had been removed, and where it was then pending, because the land was situated in the county of Prince William; that a number of infants had vested and contingent interests therein, which, by the terms and intention of the statutes conferring jurisdiction, could only be sold and converted by the circuit court of said county of Prince William; that the original bill was not verified; that the proceedings thereunder were of no effect; and finally that the order of removal was illegal and void; also that he had just been made aware of these errors, and prayed the opinion and protection of the court, and says if a good title can be made him he will cheerfully complete his purchase.

On the 11th day of November, 1876, the cause was brought on to be heard again, on the papers formerly read, this petition, an amended bill making the children born since

the institution of this suit, parties, and their answers in due form. Wherein the court decided the questions raised in the said petition, that the court had jurisdiction, and again confirmed the sale made to petitioner, and requiring bond and security in due form of the special commissioner before named; ordered the collection of the purchase money still due and unpaid, and, upon payment, directed a deed to be made to the said Edward M. Willis.

The objections of the petitioner Willis were met by verification of the bill, and all the persons interested, who had been born since the institution of the suit, were made parties under the amended bill. The petitioner Willis did not appeal from this decree of the court, nor otherwise, so far as the record shows, either in that suit, in which he had purchased the land; nor in the present action, did he complain of the want of jurisdiction of the court.

But the said Willis failing to pay the bond falling due January 1st, 1877, and the three others falling due, respectively, January 1st, 1878, 1879, and 1880, this action was instituted on the five last bonds, as stated above, October 12th, 1880. Upon the trial of the said action, the question involved herein was raised by the plaintiff in error, P. Hillman Troth.

Did the circuit court of Prince William have jurisdiction to make the sale above mentioned, or was the sale void for want of jurisdiction? The answer to this question depends upon the construction to be placed upon the act of assembly, passed March 15th, 1858, which is embodied in the last five sections of ch. 112 of the Code of 1873.

The statute under which this sale was made provides:

§ 20. "When any estate, real or personal, is given by deed or will to any person, subject to a limitation contingent upon the dying of any person without heir or heirs of the body, or issue of the body, or children or offspring, descendant, or other relative, it shall be lawful for the

circuit court, upon a bill filed by the person holding the estate subject to such limitation, in which bill all persons then living and contingently interested shall be made defendants, to decree a sale of such estates, real or personal, and to invest the proceeds of sale, under the decree of the court, for the use and benefit of the person so holding the estate, subject to the limitation of the deed or will creating the estate: provided, however, that the bill of the plaintiff shall set forth the facts which, in his opinion, would justify the sale of the said estate, to be verified by the affidavit of the party.

§ 21. "No decree shall be made authorizing such sale, unless it shall be shown by the examination of witnesses that the interest of all persons, directly or contingently interested in such estate, will be promoted thereby; nor shall any such decree be made if the deed or will creating such estate forbids it.

§ 22. "If there shall be an infant or insane defendant, to every such a guardian *ad litem* shall be appointed, who, as well as the infant (if over fourteen years of age) shall answer the bill on oath, in proper person.

§ 23. "No deposition shall be read in the suit against any infant or insane party, unless it be taken in the presence of the guardian *ad litem*, or upon interrogatories agreed on by him.

§ 24. "The decree rendered in such suit shall be as binding upon all persons who may be born thereafter and become interested in the said estate, in like manner and to the like extent as it is upon the parties to the said suit."

The plaintiff in error insists here that there is no authority given to the court by this statute to sell the land in this case; that the statute nowhere else gives authority to the court to sell land as in this case; that the statute authorizes the court to sell land upon which is engrafted an estate subject to a limitation contingent upon the death of

some one without heirs; that the term "estate," which is used, as we have seen at the beginning of the statute, is thus employed in its technical legal signification, and the court is thereunder authorized to sell land held by a *defeasible* estate, an estate liable to be defeated upon the happening of some contingency; that in this case Mrs. Robertson took an absolute life estate, and the other parties entitled to it at her death took an absolute remainder in fee; that the remainder was contingent, but neither the life estate, nor the estate in remainder, could be said to be affected with any contingency; that the one was an absolute life estate, and the other an absolute estate in remainder; that what is needed to make a case under this statute is, not that there shall be a contingent remainder, or some contingent interest in the land, but that there shall exist in it a defeasible estate of some kind, the matter of defeasance being the particular contingency named in the statute; that under the statute it is not sufficient that there shall be an uncertainty as to the persons who are to take the land, but that the uncertainty must attach to the estate taken, it is that which makes the statute applicable to a case; and where that is wanting, the statute can have no application; and that in this case the court had no jurisdiction, and the sale was a mere nullity.

The appellees, on the other hand, insist that the object of the act of 1858, *supra*, was to strip from property those fetters on alienation, which contingent limitations invariably, to a greater or less degree, fasten upon it, and by providing a ready and safe mode for its conversion and transfer; to enhance its value; and that this policy applies to all cases where property is affected with contingent limitations, as well as to cases of defeasible estates; that this construction is consonant with the spirit, and is not in violation, of the language of the act; that if we assign to the word "estate," used in the first line of the twentieth sec-

tion of the act, the sense of property, the meaning would plainly be that where property given by deed or will affected with a limitation of any sort contingent upon the dying of any person without heirs, the courts shall have jurisdiction to sell or reinvest. The case of *Faulkner* v. *Davis*, 18 Gratt. 651, is cited as authority to show that the act should be construed liberally, in order to advance the remedy and promote the policy of the legislature; that the policy of the act extends to this case, and that its language may, without a strained interpretation, embrace such cases; that the court had jurisdiction, and that the sale under its decree was valid.

And this is the question to be determined in this case.

Had the court jurisdiction of the subject matter? Was it competent for a court of equity to make such a decree of sale? This court, in the case of *Faulkner* v. *Davis*, *supra*, referring to the above quoted statute of March 15, 1858, says, " it expressly applies to any estate, real or personal, given by deed or will to *any person*, though not under disability; or, whether under disability or not, subject to a limitation contingent upon the dying of any person without heirs, &c. It certainly provided for cases which, or, at least, some of which, had been provided for, by no former statute. . . . It does not refer to trust estates, but applies, if it is not confined, to any legal 'estate, real or personal, given by deed or will to any person subject to a limitation contingent, &c.'; and authorizes a decree for the sale of the estate to be made, 'which shall be as binding upon all persons who may be born thereafter and become interested in the said estate, in like manner and to the like extent as it is upon the parties to the said suit.'"

The decree was for the sale of the *property* out and out, just as if it had been the *absolute estate* in fee simple of an individual owner. The only effect of the decree was to convert the real estate into money, and to leave that money,

or the property in which it might be invested, in the place of the real estate sold, subject precisely to the same rights and interests, present or future, vested or contingent, to which that *estate* was subject at the time of the sale.

The learned president of this court in that case, proceeding to construe *this* and other statutes to which reference had been made, said : "These statutes are eminently remedial and were dictated by a policy which seems rather to require that they should receive a liberal construction, so as to advance the remedy and promote the policy of the legislature. We can readily see how the interest of an infant would be promoted by a sale of real estate in which he has only a contingent interest, as well, and as much as by a sale of real estate belonging to him absolutely. And there would seem to be the same reason for giving a court of chancery the power to decree a sale in either case."

That is of *real estate* which belongs to an infant absolutely, or of real estate which would belong to him only upon the happening of some contingency. The weight to be given to the contention of the learned counsel for the appellant is admitted to depend upon the signification of the word "estate" in the first line of section twenty. If it is used in the sense of property, then the jurisdiction of the court to decree the sale herein is not denied, but if it is used in the act in the sense of "degree of interest in property," then, as the life estate is here absolute and not affected with any contingency, the jurisdiction of the court is denied, and the sale is claimed to be void, and of course nothing passes under a void sale.

We will observe that the learned counsel admits that the word "estate" is used in the statute in question in both senses, and not uniformly in one sense.

The word "estate" is used to signify sometimes the degree, quantity, nature and extent of interest which a person has in real property; but the word has several meanings.

1st. In its most extensive sense it is applied to signify everything of which riches or fortunes may consist, and includes personal and real property; hence we say "personal estate," "real estate." 8 Ves. 504; *Jackson* v. *Robins*, 16 Johns. 587; 4 Metc. Mass. 178; *Lambert's Lessee* v. *Paine*, 3 Cranch, 97; *Deering* v. *Tucker*, 55 Me. 284; *Bates* v. *Sparrell*, 10 Mass. 323; *Archer* v. *Deneale*, 1 Pet. 585; *Donovan's Lessee* v. *Donovan*, 4 Harr. (Del.) 177.

2d. In its more limited sense, the word "estate" is applied to lands. It is so applied in two senses. The first describes or points out the land itself, without ascertaining the extent or nature of the interest therein; as "my estate at A." *Godfrey* v. *Humphrey*, 18 Pick. 537. The second, which is the proper and technical meaning of "estate," is the degree, quantity, nature and extent of interest which one has in real property; as "an estate in fee," whether the same be a fee simple or a fee tail, or an estate for life or for years, &c.

In order to defeat the sale in this case, we are asked to hold that the legislature in using the word "estate" in the first line, thus: "When any estate, real or personal, is given by deed or will," &c., meant to say "when any degree of interest in real or personal estate is given," &c.; and when in the same section the following language is used: "It shall be lawful for the circuit courts . . . . . . . to decree a sale of such estate, real or personal, and to invest the proceeds," &c., that the legislature meant to say such property might be sold.

When we accept the ordinary and usual signification of the language used, there seems to be no difficulty in its construction—"When any estate, real or personal, is given by deed or will to any person," needs no construction to make it apply to this case. The land sold in this suit was real estate given by will to Mrs. Robertson for life, to her children in remainder, if she left any at her death; in the

contingency of her dying without issue, it went to her brother's children—that is, upon the contingency of her dying without children, or issue. Any other construction of the statute would confine it to the narrowest limits, and be a most strained and unwarranted construction, when, as we have seen under the authority cited, as we think, in reason as well, it should be construed as a remedial statute, receive a liberal construction, and, to use the language of a great judge, " if under the circumstances of this case his title can now be impeached by his vendees, and the supposed defect therein be good grounds for their withholding payment of the purchase money, it would afford just cause for reproach to the law or its administration."

We are of opinion that the decree of the circuit court in this case is valid and binding on all the parties concerned, and not void, and that there is no error in the instruction given by the court which is complained of, and that the judgment of the said court must be affirmed.

JUDGMENT AFFIRMED.