Staples, J.,
delivered the opinion of the court.
This case has been very ably and elaborately argued; many authorities have been cited, and much valuable learning displayed. The industry and researches of counsel on both sides have relieved the court of much labor, and rendered unnecessary any extended discussion of the various questions presented by the record. I do not propose to attempt to follow the learned counsel in the wide range they have taken, but simply to give the conclusions to which the court has arrived, with a brief statement of the reasons upon which these conclusions are founded.
It is perhaps better to consider the objections taken to the proceedings and decree for the sale of the appellee’s land, in the order in which they are presented by him in his petition for a rehearing.
Aud first, it is suggested that the bill did not plainly state all the estate both real and personal which belonged to the appellee, as required by the provisions of the second section of chap. 128, Code of 1860.
The bill states that David W. Davis, the father of the appellee, died in February 1855, intestate, seized aud possessed of a tract of land, which is the subject of controversy, and a number of slaves, whose names and ages *308 are given; and that this constituted all the estate belonging to the appellee. These averments are fully sustained by the evidence taken and filed by the guardian befoi’e the decree for the sale of the land was rendered. The appellee did not attempt, in the court below, to controvert this evidence; but contented himself with a general averment, that, as he had been informed, his father, at the time of his death, was possessed of stock and farming implements which must have been worth several thousand dollars. All of which may be true, and the statements of the bill also true, as the property may have been sold by the personal representative, and the proceeds exhausted in the payment of debts.
It is to be further observed that the application of the guardian for a decree to sell the appellee’s land, was based upon grounds which would have justified the sale even though it had appeared on the face of the bill that the appellee then owned all the property, claimed in his petition.
But a more conclusive answer is, that although a purchaser, at a judicial sale, may be required to see to the regularity of the proceedings upon which the jurisdiction of the court is founded, he is not bound to investigate the truth of the matters stated in the bill and deposed to by the witnesses touching the estate owned by the infant. The title cannot be affected because the case made by the record happens not to be warranted by the facts. This principle received the unanimous approval of this court in Walker's ex'or vs. Page, 21 Gratt., 636, 645. It was there held that the infant cannot reopen the case, and introduce evidence to contradict that already given and relied upon by the court that entered the decree.
The second -objection set forth in the petition, is for want of proper parties. It is claimed that Isaac B. Da *309 vis, the guardian, ought to have been made a defendant in his character as heir, inasmuch as the statute requires that “ the infant and all those who would be his heirs if he were dead, shall be made defendants: ” that the main object of this provision is to afford the infant the security derived from the presence of the next of kin before the court.
The suit was brought by Isaac B. Davis, and the bill verified by his affidavit; and when he ceased to have any connection with the case as guardian, he united as surety in the bond given for the payment of the purchase money. It is clear, therefore, that in his opinion the interest of the appellee was promoted by a sale. If he had been made a party as heir, he must necessarily have assented to the statements made by himself as guardian. What other assurance could he have given ? What other representation could he have made, that would in any wise have enured to the benefit of the appellee. Are we to vacate the decree and the sale upon some vague and undefined notion that the appellee possibly has sustained damage because the party asking for the sale as plaintiff was not before the court as defendant? This would iudeed be to sacrifice substance for the merest shadow. Isaac B. Davis having hy his active agency obtained the decree, being a party on the record when it was rendered, having united with the purchaser in the execution of the bond, can never be heard to impeach that decree, or the title acquired finder it. But let it be conceded that he may impeach it, how is the appellee affected? What cause of complaint has he if the purchaser is willing to incur the hazards of future litigation? It is not for him to object to the sale because the purchaser has not acquired a perfect title.
The appellee, in his petition, made the further objec *310 tion that Mary A. Henshaw, his paternal aunt, was not before the court. I understand his counsel, however, in the printed note of argument, as abandoning this ground, and very properly so; because, as he well said, “the court was justified in taking the statement in the bill as an averment that the said Mary A. Henshaw was dead; and that Philip T. Henshaw, one of the defendants, was her only child.
In thus disposing of the objections for the want of proper parties, I do not wish to be understood as conceding, that the learned counsel for the appellee is correct in his interpretation of the statute, when he says the main purpose in view was to protect the interests of the infant, in requiring those who would be his heirs to be made defendants. This is a very grave question, not necessary now to be decided, and no opinion is intended to be expressed upon the point.
The third error assigned by the appellee is, that the cause was not matured for a hearing according to law at the time the decree was rendered. The first branch of this objection, is based upon the ground, that although an answer was filed by the guardian ad litem, it was not in fact his answer, but that of the infant; and if, in any view, it can be considered the answer of the guardian ad litem, it was not verified by his affidavit.
It is true the answer purports to be the infant’s by his guardian ad litem; but it is signed by the latter, and a careful reading will show that it is in fact his answer. It is the opinions, statements and responses of the guardian that are given; and however the judge or clerk may have regarded or termed it in the hurry and confusion of the court, it has the same effect as if it was formally designated and filed as the answer of the guardian in his proper person.
It is also true it does not appear that the answer was *311 sworn to. But it may have been done in open court, and the entry omitted by the clerk, or the paper containing the endorsement lost or mislaid during the war, at the time the public records were taken from the clerk’s office and concealed in the country. We are not to presume that the able and efficient judge then occupying the bench was ignorant of a plain provision of the statute requiring such oath, or that he would have received and acted upon an answer not in conformity with these provisions. Every reasonable intendment should be made in this court, in favor of the regularity of the proceedings below, where the contrary does not plainly appear. And this upon the maxim, omnia praesumunier rite esse acta. More especially ought this to be the case after this lapse of time, in favor of a bona pie purchaser for value, and in support of a sale clearly established to be for the benefit of the infant at the time it was made.
The second branch of this objection, is, that the suit was brought to the June rules, and the defendants summoned then to appear; and yet the bill was not filed or sworn to until the 15th of September following: Consequently the suit stood dismissed for want of a bill, by the express provisions of the statute.
The law certainly requires the bill to be verified by the oath of the guardian. It is perhaps more regular that this should be done when the bill is filed; but it is not indispensable. The main obj ect of the statute, in requiring such oath, is, I imagine, that the court may have the assurance, derived from the guardian’s oath, that the averments of the bill are true; that the interests of the infant will be promoted by a sale; and that the guardian himself honestly entertains this opinion. And clearly this object is fully [attained if the bill is sworn to at any time before the court acts upon it and renders the decree of sale. Here the decree was rendered at the *312 November term, and the bill sworn to in the preceding month of -September; which, for all practical purposes, was the same thing as if the oath had been taken when the hill was filed.
As to the other objection, that the bill was not filed in due time, it is sufficient to say, that it might have been filed at the June, July or August rules, without new process against the defendants. The decree substantially recites that the process was returned properly executed, the bill was filed in due time, and all the steps regularly taken to mature the cause as to the defendants. Upon the authority of numerous cases, these recitals must be held conclusive in this court. Craig v. Sebrell, 9 Gratt. 131; and cases there cited.
The 4th obj ection is, that the depositions were taken and certified by the same person as commissioner who was acting as guardian. The learned counsel, in his printed notes, very rightly does not attach much importance to this objection, and it may be dismissed with a single remark, that there is nothing incompatible with the interests of the infant, in the guardian ad litem acting as an officer to take the depositions; nor is there any thing in the-letter or spirit of the statute which militates against it.
The fifth ground presented in the petition, is the supposed error of the court in decreeing a sale of the land until the dower of Mrs. Durrett was assigned her, or she-had agreed, in some lawful way, to accept the interest upon one-third of the proceeds of sale ; and that a* sale-of the land before that obstacle was removed, tended to-depreciate the market value of the property. The obvious-answer to this, is, that Mrs. Durrett, in conjunction with her husband, filed her answer to the bill, consenting to a sale. The sale was accordingly made, and her part of the proceeds, no doubt, properly secured to her. So far from the market value of the property being depreciated *313 by this course of proceeding, the infant was benefited by a sale of the entire tract unencumbered with the lien of the dower estate.
The sixth and main objection, was reserved by the learned counsel for appellee, to be last presented in the petition. It is that Isaac B. Davis, in whose name the bill was filed, was never the legal guardian of the appellee; he having been appointed by the Circuit court of Greene county “in chancery sitting.” It is insisted that the Chancery courts are not authorized to appoint guardians for infants: but that this power appertains exclusively, to the Circuit or County courts in the exercise of their common law or probate jurisdiction.
There is no question but that the English courts of chancery from an early period, have assumed as a part of their jurisdiction, the power to appoint guardians where no testamentary guardians existed. However it may have originated, or upon whatever principle or necessity founded, it is now an established doctrine of these courts, and is never called in question. Tyler on Infancy and Coverture, page 254; 2 Story Eq. Ju., sec. 1333. In some of the States of the Union chancery guardianship, as recognized in England, has never been adopted; but the jurisdiction in such cases is confided exclusively to surrogates’ or orphan’s courts; special tribunals bearing in many respects a strong resembelnce to the English ecclesiastical courts. They are clothed with power to issue letters of guardianship, to revoke them when necessary, and to supervise generally the conduct of such fiduciaries and the settlement of their accounts. The whole matter is regulated by statute, the chancery jurisdiction in such cases being wholly unknown.
In Virginia the practice in the earlier history of the country was in conformity with the English course of *314 proceeding. As far back as 1795 the General court determined it tad no authority in the matter*of appointing guardians. 3 Rob. Prac. 467. And in Ficklin v. Ficklin, 2 Va. cas. 204, the same court in 18'20 decided that the appointment of a guardian by election of the infant, after he arrives at the age of fourteen, is made on the chancery side of the County court, and not on the common law side. In a note to that case Judge Brockenbrough states that the Superior courts of law in this State had uniformly refused to.appoint guardians, and receive the election of infants. And he expresses the opinion that, as the courts of chancery have such a controlling power over the estates, government and education of wards, and over the conduct of guardians, they are the proper tribunals before whom the election by an infant of his guardian should be made. It will be observed that Judge Brockenbrough is speaking of guardians by election of the infant. He did not mean, I take it, to suggest that a different jurisdiction prevailed as to infants who had attained fourteen and those who were under that age. In the nature of things no such distinction could ever exist unless established by some express legislative enactment. The reference is no doubt, to the rule of the common law by which the minor, upon reaching the age of fourteen, was competent to select his guardian, and the person thus selected, if possessed of the proper qualifications, was invariably appointed by the court.
According to the authorities just cited, it is clear that prior to the revisal of 1819, and subsequent to it, the Chancery courts exercised the power of appointing guardians; and they were considered the only tribunals clothed with the power of making such appointments. They must equally possess it now, unless a change Was made by the revisal of 1849-’50. The settled rule, however, in construing the Code, is, that the old law was *315 not intended to be altered, unless such intention plainly appeal's. Parramore v. Taylor, 11 Gratt. 220; Owners of Steamboat Wenona v. Bragdon, 21 Gratt. 685.
The statute found in the Code of 1849, merely declares that the Circuit, County or Corporation court of any county or corporation, in which a miner resides, may appoint a guardian for him. How, conceding that this provision confers upon the Circuit and County ■courts the power of appointment as courts of probate, upon what principle is it to be construed as taking away the jurisdiction of the Chancery courts. According to any rule of interpretation the inference is that a ■cumulative, and not an exclusive, jurisdiction was intended. Wayland v. Tucker, 4 Gratt. 267.
It has been argued, however, that by the express terms •of the 11th section, chap. 128, Code of 1860, the Chancery courts are authorized to remove and appoint guardians; but not to appoint in the first instance; from which it is to be fairly inferred the intention was to limit "them to cases of removal and appointment. The same provision, substantially, is in the Code of 1819; and was the law long anterior thereto. But it was never construed as limiting the general jurisdiction of the Chan•cery courts upon the subject; a jurisdiction which had ■existed from our earliest history, and was based upon principles lying at the foundation of our system of ■equity jurisprudence. As a general rule a statute conferring power upon a court in special, enumerated cases, is not to be construed as divesting a general j urisdiction in cases of an analagous nature not enumerated.
But if the chancery courts have no power to appoint guardians in the first instance, but only to remove and appoint, it would seem to be clear where they have appointed, the validity of that appointment caunot be questioned in a collateral proceeding. Ho other court, *316 unless it be an appellate tribunal, is authorized to examine the records to ascertain whether the occasion was-one for the proper exercise of the power in question. They are courts of general jurisdiction, and their decrees and orders are conclusive until reversed by a proper proceeding. This principle has received the sanction of the courts in innumerable ins*anees. It is only necessary to refer to one, the case of Fisher v. Bassett, 9 Leigh, 119. In that case Judge Parker said: The distinction between the acts of a court having jurisdiction over the subject matter under some circumstances, and those of one which in no possible state of things can take jurisdiction over the subject, is a sound and sufficiently intelligible one to guide our j adgmentsin the present case. If under any circumstances the Hustings court could grant administration to Scott, it had jurisdicti on of the subject, and must judge of those circumstances. See cases cited in Devaughn vs. Devaughn, 19 Gratt., 563; Ballard vs. Thomas, Ibid. 14. In the present case, if the ward may question the appointment, so may the-sureties in the guardian’s bond, and so may a stranger sued by the guardian for any matter affecting the ward’s-estate. Indeed this case affords in itself a most apt illustration of the evil results of the doctrine asserted. An appointment made by a court of general jurisdiction, recognized by another, is to be pronounced utterly void to the extent of reversing a decree and invalidating the title of a bona fide purchaser for value.
Before a result of that sort is reached we should be- ■ clearly satisfied that the law on the subject is express- and mandatory.
These constitute the main, if not all the objections,, urged by the appellee to the proceedings and decree under which his land was sold. In considering them this court has not been unmindful of the importance of a *317 faithful observance of the various statutes enacted for the benefit of the infant, and for the protection of his inheritance. The power to sell the estate of those who have no capacity to be heard is a very grave one, and ■only to be exercised with great caution. Still it is an indispensable power, and is vested in some tribunal in every well regulated State. Sound policy requires that judicial sales shall not be brought into disrepute by the practice of vacating decrees for slight and minute defects in the preparation of causes, when the true meaning and ■spirit of the law has been observed. If the court clearly perceives that the sale when made was an advantageous ■one, it ought not to regard mere technical informalities which do not substantially affect the validity of the proceedings, or the rights and interests of the infant. In determining whether the sale was a beneficial one, we must look to the circumstances as they existed at the time it was made, and not to subsequent events. The purchase money may be lost by the mismanagement of the court, or its officers, or by injudicious investments, or by the occurrence of war; but surely such considerations ought not to affect the purchaser. These are matters with which he cannot interfere, and by which he ¡should never be prejudiced.
In considering the numerous objections urged in this case, I have made no reference to a very important question very ably discussed by counsel. And that is, conceding the validity of these objections and the necessity of reversing the decree, whether the appellee is entitled to the restitution of his property as against the appellant, who stands in the attitude of a bona fide purchaser for value. Whatever muy be the current of authorities iu other States, the question may be regarded, to some extent, an open one in Virginia. The tendency of opinion has been that the title falls with the reversal of the de *318 cree, except so far as the sale is within the influence of the statute.
The decision of the question is, however, wholly unnecessary in this case, because, as has been seen, the objections are insufficient when considered singly or collectively. hlor are we called on to consider any of the-proceedings subsequent to the sale. The deci-ee of the-Circuit coui’t is based upon the alleged irregularities in the conduct of the suit; and to these our opinion is confined.
For the reasons stated, the decree of the Circuit court must be reversed, and the cause remanded for further-proceedings.
Decree reversed.