# Richmond.

## SMITH v. HENKEL AND ALS.

### MARCH 11th, 1886.

1. APPELLATE COURT—*Objections there.*—Where sales-commissioner's report shows that sale was made as decree prescribed and no exception was made below, none can be made here.

2. IDEM—*Guardian ad litem—Record.*—When it appears of record that the infant defendants appeared and answered by their guardian *ad litem*, and that there was a general replication thereto, it will be presumed here that the answer was regularly filed, though the answer itself is not found among the papers in the record.

3. EQUITY JURISDICTION AND RELIEF—*Enforcement of lien—Specific performance.*—Enforcement in equity of a retained vendor's lien is a matter of right. Specific execution of contract is a matter of sound judicial discretion.

4. FRAUD—*Inadequacy— Exorbitancy.*—Neither exorbitancy nor inadequacy of price will violate a sale, unless coupled with fraud, misrepresentation, imposition, mutual mistake of confidential relations. In the absence of these elements the courts will enforce the contract.

5. INFANCY.—Where infants, apparently of full age, buy land, give their bonds, take a deed with vendor's lien retained, and fail to pay, and suit is brought to enforce the lien on the land and the purchasers, then of age, set up the defence of infancy when their bonds were signed ; the suit not being on their bonds but to enforce the lien *in rem*, the infancy is immaterial.

6. FRAUD—*Estoppel—Laches— Case at bar.*—Even where the evidence is sufficient to establish fraud on the part of vendor, yet vendees may be estopped by their acquiescence, by the lapse of time and other circumstance from setting up such defence.

7. ACCOUNT— *When unnecessary.*—Where in suit to enforce vendor's lien purchaser's bonds with credits endorsed are filed with the bill and answer does not claim additional credits, an account is not required before decree of sale.

Appeal from decrees of circuit court of Madison county, entered April, 1883, and December, 1883, respectively, in a cause wherein Noah J. Henkel and Samuel Tusing are plaintiffs, and Abram S. Smith and John Smith are defendants. The decrees being adverse to the defendants, they obtained an appeal to this court.

Opinion states the facts.

*D. A. Grimsley, J. C. Gibson* and *Jas. Hay,* for the appellants.

*J. G. & W. W. Field,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

In the fall of the year, 1869, Noah J. Henkel, through a land agent, D. M. Digges, sold to Abram Smith, in the presence of two of his sons, A. G. Smith and Daniel Smith, the farm upon which he, Henkel, resided, in the county of Madison, Virginia, containing 443 43-100 acres, ascertained by a survey, subsequently made, for the price of $15,872.21. The purchase appears to have been made by the said Abram Smith for his wife, Elizabeth, and two of his sons, John and Abram G. Smith. The sale was made in the morning, Abram Smith and his two sons being on the lookout for a farm to purchase, having spent the night before with said Henkel. The Smiths examined the land before purchasing. Abram Smith took possession of the farm, and he and A. G. Smith remained upon it and seeded a crop of wheat. The land was surveyed on the 26th of January, 1870, and on the 29th of January, 1870, a deed was executed by Henkel and wife, conveying the said farm to Elizabeth Smith, John Smith and A. G. Smith. The

Smiths paid $5,000 in cash, and conveyed to Henkel a house and lot in the town of Harrisonburg, at a valuation of $4,200; and A. G. Smith and John Smith executed their two bonds—one for $3,463.89$\frac{1}{2}$, and the other for $3,208.31$\frac{1}{2}$, the balance due for the said land. They, the Smiths, have remained in undisturbed possession, use and enjoyment of the said land ever since, residing upon and cultivating it. Elizabeth Smith died in the early part of the year 1876, and in July 1876, Abram Smith conveyed by deed to Edward S. Smith his interest in the estate of his wife, including this land purchased of Henkel. Abram Smith died in 1876, after the said conveyance, John Smith and A. G. Smith having held the land since the death of Abram Smith; and, from time to time, have made payments upon their two purchase money bonds, which payments are regularly endorsed thereon. But they failed to pay the bonds when they became due on January 1st, 1871, and January 1st, 1872. Henkel wanting to realize the money due upon the said bonds, sold and assigned one of the said bonds to Samuel Tusing. A. G. Smith knew of this assignment, and expressed his gratification as Tusing would probably grant a longer indulgence than Henkel. The Smiths still failing to pay their said bonds, in February, 1882, more than ten years after the last bond became due, Henkel and Tusing filed their bill, in this suit, in the circuit court of Madison county, to enforce the lien reserved upon the face of the deed conveying the land. On the 20th of April, 1882, an answer is filed by A. G. Smith and John Smith (though the same is signed and sworn to only by A. G. Smith), which prays to be treated, and is so treated by the court, as their cross-bill. This answer and cross-bill raised, for the first time, the objection on the part of the Smiths to the payment of the bonds, and for the first time suggested that the sale of the land, for which they were given to Abram Smith in 1869, was fraudulent. To this cross-bill Henkel and Tusing filed their

answer, and denied every allegation imputing fraud to said Henkel, or to his agent, Digges, in the sale of the land in 1869. Depositions were taken, the cause was matured, and the decrees complained of were entered.

The decree of the 25th of April, 1883, declares : " The court is of opinion that the allegations contained in the said answer of John Smith and Abram G. Smith, which is taken and treated as a cross-bill, so far as said allegations are material and are set out with sufficient definiteness, have not been established by proof, so as to deprive the plaintiffs of their right to. have their lien on the land in the proceedings mentioned, enforced, in order to the payment of the balance of the purchase money due them on said land; and that a sale of the said land, or so much thereof as may be necessary for the purpose, should be made to effect the payment of the said balance in case the payment thereof is not made in a reasonable time." And the said decree ordered the payment of $2,000.00 of the said balance of the purchase money to be made in ninety days from the end of the then term of the court ; and in default thereof, directed its commissioners, McMullan and Hay, to sell the said land, or so much thereof as may be necessary, &c., for cash sufficient to pay the costs and expenses of suit and sale, and one-third of the balance then so due as aforesaid ; and on a credit of one, two, and three years in equal installments as to the residue of the said purchase money. Default of payment was made and the commissioners made sale of the land, and duly reported their action to the court ; and on the — day of December, 1883, the court entered its decree confirming the said report of sale, and ordering the application of the proceeds of the sale to the payment of costs and expenses, and the satisfaction of plaintiffs' lien for unpaid purchase money, and directed a writ of possession for the land sold to the purchaser.

There is no error in the decree of the — day of December,

1883, confirming the sale of the land as reported by the special commissioners, McMullan and Hay, September 15, 1883, to which report there were no exceptions. The decree recites the fact that no exception to the sale of the land had been taken. The report of the commissioners of sale shows, upon its face, that the sale was made in strict accordance with the decree directing the sale to be made. It is too late to make this objection, for the first time, in the appellate court. In the brief filed by counsel for appellants, it is insisted that the decree of the — day of December, 1883, is erroneous, because it appears that the infant defendants, heirs of Elizabeth Smith, were not represented by guardians *ad litem* when the decree of sale April 25, 1883, was made. The record shows that the infant defendants were before the court; that they answered by guardian *ad litem*, and to their answer there was a general replication. The cause appears, by the record, to have been ready for a hearing upon the merits at the September term, 1882, of the court; for, at that term, a consent decree was entered making the cause a vacation one, and agreeing that the vacation decree should have the same effect as if entered in open court. It is not to be presumed that the learned and able counsel, who were conducting the defence with zeal and diligence, would have allowed the case to go into the hands of the judge to be decided in vacation, if it had not been properly matured for a hearing as to all the parties. It is possible and even probable that this answer was accidentally lost or mislaid from the papers; but, be this as it may, the decree recites that the answer was filed and a general replication put in. Nothing can be averred against this record. *Durrett* v. *Davis*, 24 Gratt. 302.

The court did not err in the decree of the 25th of April, 1883. The bill filed was simply to enforce the vendor's lien reserved upon the face of the deed upon the land conveyed.

It was not a bill for the specific execution of the contract, as counsel contend. The contract for the sale of the land had been specifically executed, and the deed delivered by the grantor and accepted by the grantee ten or twelve years before the filing of the bill, and the greater portion of the purchase money had been paid, and the defendants had been in undisputed and uncomplaining possession, use, and enjoyment of the land from 1869 to 1882, when the bill was filed to enforce the lien for the unpaid purchase money created by the acts of the parties to the deed, and evidenced by the deed. The bill to enforce this lien is not addressed to the sound discretion of the court, and does not ask its aid to execute the contract, which had been already executed. The enforcement of a lien is a matter of right; the specific execution of a contract is a matter of sound judicial discretion.

The first error assigned in the decree of April 25, 1883, is: "Because the testimony in the case plainly shows that the price at which the said land was purchased was a most extravagant and exorbitant one." It is denied that the price was extravagant or exorbitant. The most that can be claimed from the evidence is that the land sold for a fair or full price. All the witnesses proved that at the time this sale was made lands were at their highest market value. The evidence introduced by the defendants themselves proves that there was an exaggerated price put upon and obtained for lands sold in 1869. Parties buying and selling are left to fix their own prices; and in the absence of fraud, misrepresentation, and imposition, the courts sustain the prices fixed by the parties themselves. Neither inadequacy nor redundancy of price will vitiate a deed or contract unless there is fraud or mutual mistake connected with it; or there is some fiduciary relation between the contracting parties. The next assignment of error is that the price of the land obtained was induced by fraudulent

VOL. LXXXI—67

and false representations made by the vendor, or his agent, and on which the vendees relied. The evidence proves that Abram Smith was a man of unusual mental vigor and business experience and capacity, and that he was the chosen agent and adviser of the defendants to select and bargain for the land. The answer of Henkel to the cross-bill positively and explicitly denies the charge of false representation, and it is not sustained by the evidence. The averment in the answer of A. G. Smith, that he was not twenty-one years old when he signed the bond, is immaterial; he was, to all appearance, a grown man, and the vendor Henkel and his agent Digges had no intimation or reason to think otherwise; yet 'tis wholly immaterial, in fact, since the suit is not upon the bond, but is a bill to proceed, *in rem*, against the land to enforce a lien reserved upon the face of the deed for the purchase money; a proceeding not affected by the non age of one of the grantees. Henkel denies explicitly in his answer to the cross-bill charging it, that he represented the tract of land sold to embrace 150 acres of bottom land; and there is not a particle of evidence that anything was said about the quantity of bottom land on the tract, except the depositions of the Smiths, who are defendants and parties in interest. Their competency as witnesses is excepted to, not alone because they are parties to the record and parties in interest; but because the transaction for the sale of the land was one to which they were parties, and because Abram Smith and Digges are dead, and Henkel, by reason of the death of Abram Smith, cannot testify.

But even if the defence set up had been good and allowable at any time, they could not make it, after ten years' acquiescence in the sale and conveyance, to defeat a suit to enforce a lien reserved by their recorded deed upon the land. Their laches and continued enjoyment of the land, and the death of parties who could explain the transaction, estops

them now.    The transaction was in 1869, and if any misrepresentations were made, they were made in 1869.    Immediately after the contract Abram Smith took possession of the land and seeded a crop of wheat.    The land was surveyed and the deed made and delivered and accepted January, 1870 ; the larger part of the purchase money was paid; bonds executed for the residue—all after the most ample time and opportunity to examine and test the accuracy of all the representations alleged to have been made by Henkel, the vendor; and, upon these bonds for the deferred balance of purchase money, payments were made from time to time by the vendees and the defendants in use, occupation and enjoyment of the land, from 1869 to 1882, without an intimation of any deficiency of the *quantum* of bottom land until their cross-bill filed in this suit.  Abram Smith, who purchased the land, and Elizabeth, his wife, one of the parties for whom the land was purchased, take possession in 1869, and live upon and cultivate the land until they die in 1876, without any complaint by them, or either of them, as to the *bona fides* of Henkel, or of Digges, his agent.    And the defendants, after the death of their parents, continue in possession and enjoyment of the land, and never say or do aught looking to the question or impeachment of the transaction of sale until 1882, when an effort is made to compel them to pay the balance of the purchase money.    Nothing but clean hands, " continued good faith and reasonable diligence can call courts of equity into activity.    When these are wanting the court is passive and does nothing."    *Hatcher* v. *Hall,* 77 Va. (1 Hansbrough), 76 ; *Updike's Administrator* v. *Lane,* 78 Va. (2 Hansbrough), 132; *Lamar's Executor* v. *Hale,* 79 Va. (3 Hansbrough), 147 ; *Chilhowie Iron Company* v. *Gardiner, Id.* 305.    It is contended by counsel in their brief that it was error to decree a sale of the land before an order for an account; but this was not necessary.    The bonds are exhibited with the bill, and the pay-

ments all endorsed upon them.  The answer does not allege that any other payments had been made, or other credits to be allowed; and these bonds, with the credits endorsed upon them made an account unnecessary; and this must have been the opinion of counsel for the defendants, when they submitted the case for a hearing and decision in vacation, without an account.

The circuit court held that the alleged fraud had not been proved; and, upon a review of the whole record, we concur with that court, and affirm the decrees complained of.

DECREES AFFIRMED.