PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Millette, S.J.

LEILA LAROCK

v. Record No. 210260

CITY OF NORFOLK

OPINION BY
SENIOR JUSTICE LEROY F. MILLETTE, JR.
May 19, 2022

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge

This appeal arises from a former city employee's petition to a circuit court requesting the implementation of a grievance panel's decision to reinstate her and award backpay, and the circuit court's refusal to do so. For the reasons stated below, we conclude the circuit court erred in refusing to implement the grievance panel's decision, and therefore we will reverse the judgment of the circuit court and remand this case with instructions.

## I. BACKGROUND

Leila LaRock ("LaRock") was an employee of the City of Norfolk (the "City") for approximately 14 years. On October 1, 2018, the City terminated her. LaRock timely filed a grievance of her termination pursuant to Code § 15.2-1507(A)(11). On October 28, 2019, the grievance panel held a hearing regarding LaRock's termination. On November 7, 2019, the panel unanimously determined to reinstate LaRock and award her backpay from the date of her termination.

However, the City Manager declined to implement the panel's decision. On November 4, 2019, the City discovered that LaRock had used her city e-mail login and password to access the City's cloud database system ("Egnyte") after her termination. Specifically, LaRock had accessed the system on July 3, 2019, August 17, 2019, and October 26, 2019, all before the October 28, 2019 panel hearing. In reaching his decision, the City Manager noted that LaRock's

conduct "implicate[d] various state and federal laws that [could] subject her to criminal and civil liability." He reasoned that because a city employee who engaged in the unauthorized use of Egnyte would be subjected to serious disciplinary action, including termination, it would be inconsistent with the City's policies to reinstate LaRock. The City advised LaRock of its decision on January 8, 2020.

LaRock filed a petition in the circuit court pursuant to Code § 15.2-1507(A)(11), arguing the grievance panel's decision was binding on the City and seeking an order requiring implementation of the decision.[1] On July 16, 2020, the circuit court held a hearing on the petition. When asked at the hearing by opposing counsel whether she had accessed Egnyte after her termination but pending her grievance panel hearing, LaRock conceded that she had. However, both LaRock and the City stipulated that LaRock did not copy any records from Egnyte. LaRock argued that, despite her conduct, "the proper remedy would be to go ahead and reinstate her and if [the City] want[ed] to take disciplinary action at that time," it could.

On August 11, 2020, the circuit court issued a letter opinion ruling that it would not enforce the panel's decision because it was against public policy. The court reasoned that LaRock's actions violated the City's policies and were potentially felonious. Because LaRock did not use the grievance process in an honest manner and failed to come before the court with clean hands,[2] her actions also violated the clean hands doctrine. The court held enforcement of

---

[1] After filing her petition in the circuit court, LaRock filed a second grievance with the City disputing the City Manager's determination not to implement the panel's decision. The disposition of this grievance is not part of the record for this case. Therefore, we will not address it.

[2] In other words, she came before the court having engaged in conduct demonstrating a want of "continued good faith" and "conscience." *Smith v. Henkel*, 81 Va. 524, 531 (1886); *Updike v. Lane*, 78 Va. 132, 138 (1883); *Harrison v. Gibson*, 64 Va. (23 Gratt.) 212, 223 (1873).

2

the panel's decision, which was reached without the benefit of knowledge of her actions while the grievance process was ongoing, would be against public policy. Additionally, it explained that it would create improper precedent to reinstate LaRock when the City would likely terminate her a second time soon after her reinstatement. On December 10, 2020, the circuit court entered a final order memorializing its letter opinion.

On appeal, LaRock argues the grievance panel's decision was consistent with law and policy, and the circuit court was therefore required to implement it under Code § 15.2-1507(A)(10)(b)(7). She argues that her conduct, which occurred outside of the panel proceedings, was irrelevant to the determination of whether to implement or refuse to implement the panel's decision. Lastly, she argues that the circuit court deprived her of her statutory right to a grievance proceeding because if it had implemented the panel's decision and the City subsequently terminated her, she would have been entitled to a second grievance proceeding.

The City counters that LaRock's conduct occurred during and was a part of the grievance panel proceedings. Thus, her actions are relevant to the question of whether the circuit court should have implemented the panel's decision. The City asserts that the circuit court did not err in refusing to implement the panel's decision because it was inconsistent with the clean hands doctrine and the City's policies.

## II. ANALYSIS

An employee of a locality is entitled to a grievance proceeding to resolve disputes that may arise between her and the locality as her employer. Code § 15.2-1506. Disciplinary actions, including terminations, are grievable. Code § 15.2-1507(A)(1). When a locality's grievance procedure provides for a final hearing before a grievance panel, the decisions of the grievance panel "shall be final and binding and shall be consistent with provisions of law and written

3

policy." Code § 15.2-1507(A)(10)(a)(6). However, "[t]he question of whether the relief granted by a panel . . . is consistent with written policy shall be determined by the chief administrative officer of the local government[.]" Code § 15.2-1507(A)(10)(a)(7).

After the grievance panel reaches its decision, either party may petition a circuit court "for an order requiring implementation of the hearing decision." Code § 15.2-1507(A)(11). This Court has explained the circuit court's discretion in reviewing a grievance panel's decision as follows:

> [A] circuit court's authority, according to the statute, is limited to the act of implementing, or refusing to implement, the hearing officer's ruling. A circuit court lacks authority to consider the grievance *de novo*, to modify the hearing officer's decision, to substitute the court's view of the facts for those of the hearing officer, or to invoke its broad equitable powers to arrive at a decision that the court may think is fair; the court may only "implement."

*Virginia Dep't of Env'tal Quality v. Wright*, 256 Va. 236, 241 (1998).

By considering LaRock's access of Egnyte, which the grievance panel never considered, the circuit court exceeded its authority. *Id.* LaRock's access of Egnyte was conduct that occurred after she was no longer a city employee, and was separate and apart from the initial allegations that led to her termination. The grievance panel was not afforded any opportunity to consider this conduct when it addressed her termination. Because a circuit court may not substitute its view of the facts for that of the panel, it follows that a court may not consider additional facts not presented to the panel. *Id.* The circuit court, therefore, refused to enforce the panel's decision for an improper reason.

The court further erred in applying the clean hands doctrine. Under the equitable clean hands doctrine, a "complainant seeking equitable relief must not himself have been guilty of any inequitable or wrongful conduct with respect to the . . . subject matter sued on." *Cline v. Berg*, 273 Va. 142, 147 (2007); *see also Butler v. Hayes*, 254 Va. 38, 43 (1997) ("According to a

4

settled equity maxim, a litigant who seeks to invoke an equitable remedy must have clean hands."), *Brown v. Kittle*, 225 Va. 451, 456 (1983) (stating the clean hands doctrine is an equitable doctrine by which a party is denied relief because of his own inequitable conduct). This Court held in *Wright* that a circuit court may not invoke its equitable powers to substitute its own judgment of what it thinks is fair for the grievance panel's decision. 256 Va. at 241. By applying the clean hands doctrine, the circuit court invoked its equitable powers where it was not entitled to do so.

Furthermore, a circuit court may not consider a grievance *de novo*, because the grievance panel's decision is binding on the circuit court. *Id.*; *see Angle v. Overton*, 235 Va. 103, 106-07 (1988) ("[I]f [the City] w[as] free either to accept or to reject the panel's decision, the decision would not be binding and the grievance procedure mandated by the General Assembly would be rendered impotent."); *see also Zicca v. City of Hampton*, 240 Va. 468, 471 (1990) (reversing a circuit court's decision after determining the circuit court failed to implement the panel's binding decision to reinstate an employee to the employee's previous position). Accordingly, the circuit court erred when it failed to implement the panel's binding decision to reinstate LaRock and award her backpay.

Additionally, the circuit court's refusal to implement the grievance panel's decision, as LaRock asserts, deprived her of her statutory right to a second grievance proceeding. The circuit court effectively combined LaRock's initial termination with her newly discovered conduct of accessing the City's cloud database system after that termination. This prevented her from following the grievance procedure under Code § 15.2-1507 concerning her access of Egnyte. By not implementing the panel's decision, the circuit court short-circuited LaRock's right to initiate a grievance premised upon the new allegations against her.

5

### III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court and remand this case with directions that the circuit court enter an order which requires that LaRock be reinstated to her position and receive full backpay from the date of her termination in accordance with the panel's decision.

*Reversed and remanded.*

JUSTICE KELSEY, with whom JUSTICE CHAFIN joins, dissenting in part.

I agree with the major premise of the majority's reasoning — that a circuit court cannot refuse to enforce a grievance panel's decision simply because the court disagrees with it. Because that is not the case before us, I disagree with the majority's conclusion.

### I.

The City of Norfolk fired Leila LaRock for violating the City's employment policies by allegedly forging a signature. A grievance panel later disagreed with the City's position and directed the City to allow LaRock to return to work with backpay. After the grievance panel made its determination, the City discovered that LaRock had accessed 180 confidential files during 5 separate logins into the City's secure computer database that contained highly sensitive financial information and grant-related documents. She secretly did this *after* her termination and *before* the grievance panel directed that she be rehired. Working on a non-City computer, LaRock electronically entered the City's secure database using her former employee user ID and employee-specific password. Upon breaching that security firewall, she had the ability to "access, upload, alter and delete documents stored" in the secure database. J.A. at 9. LaRock disclosed none of this information to the grievance panel, and the City did not learn of her breach of its secure database until after the panel had completed its work.

6

Pursuant to Code § 15.2-1507(A)(10)(a)(7), the City Manager reviewed the grievance panel's decision to determine if it was consistent with the written employment policies. The City Manager offered no disagreement with the grievance panel's view that the City should not have fired LaRock based upon the forgery allegation. If that were the only matter to consider, the City would have dutifully rehired her. What the City Manager concluded that he could not do, however, was rehire LaRock after she had later committed what he viewed as an unauthorized, potentially criminal, computer trespass of the City's secure databases.

LaRock's misconduct, the City Manager determined, violated the employee standards outlined in the City's written employment policies. He concluded:

> Ms. LaRock's conduct outlined above was information unknown to the City and the grievance panel when the panel made their determination to reinstate Ms. LaRock. In light of Ms. LaRock's conduct during the pendency of her grievance, a decision to reinstate an individual, who has engaged in conduct during the pendency of her grievance, that had she still been employed would have subjected her to the most serious of discipline available, including termination, and which would have precluded her hiring as a new applicant, is inconsistent with City policy, including but not limited to the City's Corrective Action Guidelines and Procedures and Grievance Procedures.

J.A. at 32.

LaRock sued the City seeking her old job back pursuant to the grievance panel's determination. In the circuit court, LaRock admitted that she had committed the actions documented by the City Manager's investigation. *Id.* at 28, 63-65. But that did not matter, she argued, because "the proper remedy" would be to reinstate her, and if the City "want[ed] to take disciplinary action at that time, that's a different matter." *Id.* at 45. In her view, nothing she did after her termination was relevant to the question whether the circuit court should issue a reinstatement order enforcing the grievance panel's decision. The circuit court rejected LaRock's argument, as do I.

7

My ultimate disagreement with LaRock begins on a point of agreement. Under Virginia law, a circuit court cannot alter or reinterpret a grievance panel's decision simply because the court disagrees with it. *See Virginia Dep't of Env't Quality v. Wright*, 256 Va. 236, 241-42 (1998).[1] In LaRock's view, the analysis ends there: The grievance panel said she should be reinstated, and the circuit court simply refused to do so.[2] The simplicity of LaRock's argument is attractive but not persuasive.

## II.

This case came to the circuit court not as an appeal by the City of an adverse decision by the grievance panel. The City has never challenged that decision. This case instead is LaRock's challenge to the City Manager's determination that after-discovered evidence (wholly unknown to the panel) rendered LaRock's reinstatement violative of municipal employment policy.

---

[1] In *Wright*, a hearing officer rejected an employee's challenge to a demotion but gratuitously "recommended" that the state agency nonetheless reinstate him to his former position. 256 Va. at 239-40. After the agency ignored the recommendation, the circuit court entered an order reinstating the employee to his former position. *Id.* at 241. We reversed "because the trial court erred in deciding the merits of the controversy" by transforming the hearing officer's recommendation into a judicial command. *Id.* at 242. The holding in *Wright* had nothing to do with the judicial propriety of refusing to issue an in personam reinstatement order for reasons unrelated to the merits of the controversy before the administrative decisionmaker.

[2] The majority agrees with LaRock on this point. *See ante* at 5. The authorities cited for this proposition, however, are cases in which we have held that the grievance panel's decision was "binding" on the local government employer (not the court) and in which the circuit court had improperly interpreted the grievance decision. *See Wright*, 256 Va. at 241-42 (finding that the circuit court erred in enforcing a grievance panel's recommendation as if it were a binding decision); *Zicca v. City of Hampton*, 240 Va. 468, 470-71 (1990) (holding that the "grievance panel's decision is binding on the City" and that the circuit court erred in finding that the City "had technically complied" with the decision); *Angle v. Overton*, 235 Va. 103, 106-07 (1988) (holding that the trial court erred in finding that the panel's decision was a non-binding recommendation on the county). None of these cases address the issue before us — whether the grievance panel's decision is binding on a circuit court called upon to implement the decision in the face of after-discovered evidence wholly unrelated to the forgery allegation considered by the panel. The distinction may sound artificial, but it is not. It goes to the very heart of the judicial role in overseeing these disputes.

8

Claiming that this after-discovered evidence was irrelevant, LaRock went to court seeking a judicial implementation order under Code § 15.2-1507(A)(11) that would require the City (subject to contempt-of-court consequences for noncompliance) to reinstate LaRock despite the City Manager's decision that doing so violates the City's employment policy. The circuit court rejected LaRock's request. I agree with the circuit court.

A.

The governing statute provides that "[t]he question of whether the relief granted by a panel . . . is consistent with written [employment] policy shall be determined by the chief administrative officer of the local government," Code § 15.2-1507(A)(10)(a)(7), subject to exceptions inapplicable here. The Charter for the City of Norfolk makes clear that "[t]he city manager shall be the administrative head of the municipal government." Norfolk City Charter § 49, 1999 Acts chs. 479, 525, at 681, 793. The chief administrative officer's interpretation of the written employment policies, if not arbitrary and capricious, wholly supersedes anything the grievance panel decides to the contrary.

The City Manager in this case determined that LaRock's unauthorized access into the City's secure databases — using her personal computer, her former employee user ID, and her former employee password — violated written employment policies. The City Manager acknowledged that LaRock was a former employee at the time of the unauthorized access but interpreted the policy to apply to all new hires and a fortiori to any employee reinstated retroactively to a former position. The circuit court agreed: "Although the panel never had an opportunity to consider these improper actions of Ms. LaRock, they constitute a violation of City policy regarding the restricted access to [the secure computer databases] and are potentially felonious." J.A. at 35.

9

The City Manager's interpretation and application of the written employment policies cannot be easily dismissed. If the City Manager approved the reinstatement, LaRock's status would have been retroactively reclassified as an employee from the date of her termination until the date of her reinstatement. Her pay and her health benefits would have been fully restored for that entire period, including the days during which she had unauthorized access to the secured computer database. If she had been an actual employee at the time of the offense, the City Manager determined that under the City's written employment policies, LaRock's actions "would have subjected her to the most serious of discipline available, including termination." *Id.* at 32. If she were reinstated and retroactively deemed an employee, the City Manager reasoned, the same policies should apply no differently.

B.

I will leave for another day whether the City Manager's reasoning, standing alone, would be convincing enough for a circuit court to withhold a judicial order of reinstatement. The City Manager's statutory authority to interpret and apply the City's written employment policies was not the principal basis for the circuit court's opinion. While the circuit court agreed with the City Manager and acknowledged his role in applying City policy, the court focused on the legal principles governing the issuance of a judicial reinstatement order. I believe the court was right to do so.

A judicial reinstatement order is an equitable remedy "analogous to injunctive relief historically obtainable only in a court of equity." *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 453 n.10 (1977). A reinstatement order is an in personam,

10

coercive order to an employer carrying the full force of the judicial contempt power.[3]  As such, a reinstatement order retains all the cautionary limitations inherent in its equitable provenance. The circuit court in this case focused on the unclean hands doctrine, "an ancient maxim of equity courts," *Richards v. Musselman*, 221 Va. 181, 185 (1980), deeply embedded in the history of Anglo-American chancery courts.  *See generally* 1 John Norton Pomeroy, A Treatise on Equity Jurisprudence §§ 397-98, at 432-34 (1881); 1 Joseph Story & W.H. Lyon, Jr., Commentaries on Equity Jurisprudence § 98, at 98 (14th ed. 1918).

Governing the remedial power of chancellors, the unclean-hands doctrine provided "a universal rule guiding and regulating the action of equity courts in their interposition on behalf of suitors for any and every purpose, and in their administration of any and every species of relief." 1 Pomeroy, *supra*, § 397, at 432.  The doctrine is not and never has been a conceptual outlier but "one of the elementary and fundamental conceptions of equity jurisprudence," *id.* § 398, at 433, and "far more than a mere banality," *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).[4]

The seminal American case surveying the doctrine states its broad nature but also emphasizes the restraining principle that prevents the doctrine from becoming nothing more than a judicial ad hominem:

> The governing principle is "that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable

---

[3] *See generally Atlas Roofing Co.*, 430 U.S. at 453 (recognizing that a reinstatement order is a type of remedy used for the enforcement of a statutory violation).

[4] Even when "the maxim of 'clean hands' does not apply," the equitable doctrine is nonetheless "closely akin to the [common-law] maxim in pari delicto, and the two are sometimes discussed as though involving substantially the same principle."  *See Heflinger v. Heflinger*, 136 Va. 289, 296 (1923).  *See generally* William J. Lawrence, III, *The Application of the Clean Hands Doctrine in Damage Actions*, 57 Notre Dame Lawyer 673, 676, 681 n.80 (1982); Kent Sinclair, Virginia Remedies § 43-3[D], at 43-17 to -19 (5th ed. 2016).

11

> principle, in his prior conduct, then the doors of the court will be shut against him . . . ." And . . . "whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."
>
> But courts of equity do not make the quality of suitors the test. . . . They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice.

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244-45 (1933) (citations omitted).

Courts that apply these principles "are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Id.* at 245-46.

When legislatures create statutory rights enforced by traditional equitable remedies, the unclean hands doctrine has been "assimilated into statutory law" by courts of equity. T. Leigh Anenson, *Announcing the "Clean Hands" Doctrine*, 51 U.C. Davis L. Rev. 1827, 1829 & n.3 (2018). In Virginia, for example, the judicial power to issue injunctive relief has been codified in scores of statutes, and we routinely apply embedded equitable defenses (e.g., unclean hands, laches, estoppel) when considering whether to issue injunctive relief to enforce a claimed statutory right.[5] When doing so, we are merely applying a "parallel canon of statutory interpretation" that serves as an analogue to the more commonly known principle that "[w]hen interpreting statutes addressing common-law subjects, we read them in conformity with the preexisting common law to the greatest extent possible." *Day v. MCC Acquisition, LC*, 299 Va. 199, 206 (2020). To one extent or another, most courts do the same when addressing statutory

---

[5] *See, e.g.*, *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 17-19 (2019); *Cline v. Berg*, 273 Va. 142, 147-48 (2007); Sinclair, *supra* note 4, § 51-3[A], at 51-29 to -30; *cf.* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2946, at 100-11 (3d ed. 2013).

claims enforceable by a court's equitable powers. *See generally* T. Leigh Anenson, *Equitable Defenses in the Age of Statutes*, 36 Rev. Litig. 659, 665-83 (2018).

These principles apply in a statutory employment termination case no differently than any other judicial proceeding in which the complainant seeks an equitable remedy. In *McKennon v. Nashville Banner Publishing Co.*, an employee alleged that she was fired in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), and sought a "variety of legal and equitable remedies." 513 U.S. 352, 352 (1995). The United States Supreme Court held that "even though the employer has violated the Act, we must consider how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered." *Id.* at 360. If such wrongdoing implicates the "unclean hands" doctrine, the Supreme Court stated, equitable relief can be and often must be denied. *Id.* at 360-61. Even if the employee was unlawfully discharged, the Supreme Court explained:

> The proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case. We do conclude that here, and *as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.*

*Id.* at 361-62 (emphasis added).[6]

---

[6] *See also Dotson v. Pfizer, Inc.*, 558 F.3d 284, 298-99 (4th Cir. 2009); *Hartman Brothers Heating & Air Conditioning, Inc. v. NLRB*, 280 F.3d 1110, 1115-16 (7th Cir. 2002); *Miller v. AT&T Corp.*, 250 F.3d 820, 837-38 (4th Cir. 2001); *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238-41 (4th Cir. 1995).

## C.

I am in full agreement with the circuit court's application of the unclean hands doctrine. As the City Manager discovered and the circuit court factually found, LaRock used a non-City computer to access a highly confidential, secure database maintained by the City. Though LaRock was not an employee at the time of the access, she used her former employee user ID and employee-specific password to breach the City's security firewall. At that point, she had the ability to "access, upload, alter and delete documents stored" in the secure database. J.A. at 9. Uncontradicted evidence shows that LaRock secretly accessed 180 confidential files during 5 separate unauthorized logins.

Like the circuit court, I offer no opinion on whether LaRock committed a criminal computer trespass. Whether she did or not, her unauthorized access was surely reason enough for the circuit court to reject LaRock's request to implement the grievance panel's decision by issuing a judicial order of reinstatement. In refusing to do so, the circuit court was not attempting to relitigate the merits of the dispute before the grievance panel, which was limited to the question whether LaRock was rightfully terminated for forgery. The court was instead addressing for the first time after-discovered evidence that had a direct bearing on the requested equitable remedy that only a court, not a grievance panel, could award and enforce.

As for LaRock's rejoinder — that only a future grievance panel can make that call after the City fires her following her reinstatement — I believe that argument misses the point. What a grievance panel might or might not do in the future cannot bind what a court should or should not do in the present. The circuit court's equitable power to grant or withhold a purely judicial remedy — not any claimed discretion to relitigate the grievance panel's decision — is at stake here. The remedial discretion available to a court considering a request for a reinstatement order

14

may take into account "the factual permutations and the equitable considerations" that naturally "vary from case to case." *McKennon*, 513 U.S. at 361. The circuit court properly found that those permutations and equitable considerations are present in this case.

III.

In sum, the circuit court did not abuse its equitable discretion by refusing to issue a judicial reinstatement order based upon after-discovered evidence that LaRock committed a secret, unauthorized breach of the City's secured computer database.

I respectfully dissent in part.[7]

---

[7] On the issue of backpay, LaRock is entitled to backpay from the date of her termination to the date that the City first learned of her breach of the City's secured computer databases. *See McKennon*, 513 U.S. at 362 ("The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. In determining the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party."); *see also Hartman Brothers Heating & Air Conditioning, Inc.*, 280 F.3d at 1115-16; *Castle v. Rubin*, 78 F.3d 654, 657-58 (D.C. Cir. 1996); *Russell*, 65 F.3d at 1238-41.