# Richmond.

TURNER & OTHERS v. BARRAUD & OTHERS.

JANUARY 14, 1904.

Absent, Buchanan, J* Keith, P., not participating.

1. JURISDICTION OF COURTS—*Presumptions.*—The judgments and proceedings of superior courts of general jurisdiction are presumed to be right until the contrary is shown. Such courts are presumed to have jurisdiction of both the subject matter and the parties to causes in which they render judgments, but this presumption only arises as to jurisdictional facts concerning which the record is silent. If the record discloses a particular method of service of process and none other is alleged, none other will be presumed.

2. JUDGMENTS—*Infants—Guardian ad Litem—Process—Collateral Attack.*—The only way known to our law of bringing an infant before a court is by a guardian *ad litem* appointed to conduct his defence for him. If he has appeared in a suit by a guardian *ad litem* regularly appointed for that purpose, he cannot afterwards, in an independent suit, impeach a decree rendered against him for errors and irregularities in the proceedings in the suit in which the decree was rendered; but if no guardian *ad litem* was appointed or recognized by the court, he is not bound by the action of one who assumed to act for him, and the decree against him is void, and may be collaterally assailed.

3. PROCESS—*Guardian Ad Litem—Appointment—Case in Judgment.*—The memorandum made by counsel is the clerk's chart by which he is to be guided in making out the summons, appointing guardians *ad litem*, and maturing causes for hearing. He is not called upon to read the bill or declaration, and undertake to reconcile it with the memorandum. The appointment by the clerk of a guardian *ad litem* for the "infant defendants" at the same rules at

*Judge Buchanan was detained at home by sickness.

which a bill is filed does not embrace an infant named in the bill, but not mentioned in the memorandum for suit, nor in the summons, nor in the entry on the clerk's rule book, where it appears that the names of all other parties to the suit, including five other infants, are mentioned in said memorandum, summons and rule book. The appointment of the guardian *ad litem* by the clerk for the "infant defendants" applies to the other five infants mentioned, and the answer filed by a guardian *ad litem* including the name of the omitted infant, and purporting to be filed for him does not bind him, where, as in this case, the court did not subsequently recognize or treat him as such guardian *ad litem*. The hearing of the cause on such answer is not a recognition by the court of the right of the guardian *ad litem* to act for the omitted infant in view of the fact that the caption to the decrees omits his name, though the names of all other parties are given.

4. PARTIES—*Process.*—Simply naming a party in a bill as a defendant does not make him such. He must be brought within the jurisdiction of the court by citation, voluntary appearance, legal representative, or by some means recognized by the law as sufficient. He must have the opportunity of being heard in order to be bound by any decree made in the cause.

5. JURISDICTION—*Matters Within the Issue.*—In a bill filed by a life tenant to construe the will of the testator under whom the life tenant holds, and to ascertain his interest in the residuum of the testator's estate and subject it to payment of complainant's debts there can be no decree for the sale of the remainder of the land in which he has a life estate. This is outside of the issue presented by the pleadings. Not only must courts have jurisdiction of the subject matter of litigation and of the parties, but the point decided must be in substance and effect within the issue.

Appeal from a decree of the Circuit Court of Norfolk county in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Heath & Heath* and *W. W. Old,* for the appellants.

*W. L. Williams, A. C. Braxton* and *F. H. Busbee,* for the appellees.

HARRISON, J.; delivered the opinion of the court.

D. C. Barraud, Senior, of the city of Norfolk, died in 1867, leaving a will, by which he gave to his grandson, D. C. Barraud, Junior, a life estate in the "Barrons" farm in Norfolk county, with remainder to his lawful issue, if he should die leaving any, and if he should die without lawful issue then such remainder to pass, under the residuary clause of the will, to the persons there named. In addition to this specific bequest, the testator gave to this grandson an undivided interest in the estate passing under the residuary clause of his will.

Upon the death of the testator, the life tenant took possession of the "Barrons" farm. He rapidly exhausted his interests under the will of his grandfather, and soon had those interests, which were chiefly in lands, including his life estate in the "Barrons" farm, heavily encumbered by deeds of trust and judgments taken against him.

In 1874, D. C. Barraud, Jr., and others, united as plaintiffs in a chancery suit against R. C. Marshall and others, to subject his interests in his grandfather's estate to the satisfaction of his debts. The object of this suit is stated in the bill filed as follows: "The object and intent of this bill is to construe the said will, to fix and determine the rights and interests of the various parties interested therein, to protect and provide for the annuities, and to make partition in kind of the said real estate so devised by the said D. C. Barraud, deceased, to and among the parties entitled thereto, according to their respective shares and interests, so that the part or share of your orator, the said D. C. Barraud, therein, may be set apart in kind, if practicable, or so far as practicable, and sold for the benefit of the creditors under the said deeds of trust, and the judgment creditors aforesaid." In May, 1875, a decree was entered in this cause, directing a sale of the entire fee in the "Barrons" farm (remainder as well as life estate). November 26, 1878, a consent decree

was entered, confirming a private sale of this farm to William
H. Turner, at the price of $5,300.00   This decree ascertained
the remainder interest in the proceeds of sale to be $1,150.10,
and directed the same to be deposited in bank to await the death
of the life tenant.   Three days later, on November 29, 1878, a
final decree was entered, confirming an account of disburse-
ments and striking the case of *Barraud, &c.,* v. *Marshall, &c.,*
from the docket.

William H. Turner, the purchaser at the sale mentioned, died
in 1885, and the present suit was instituted in February, 1901,
by his son, Henry L. Turner in his own right and as next friend
of two infant grandchildren of William H. Turner, against P.
St. Geo. Barraud and his four brothers and sisters, the children
of D. C. Barraud, Jr., seeking a decree quieting their title to
a portion of the "Barrons" farm, claimed by them under the
will of their ancestor.

This bill reviews the proceedings in the suit of *"Barraud, &c.,*
v. *Marshall, &c.,"* and alleges that under those proceedings Wil-
liam H. Turner, the ancestor of complainants, acquired a perfect
fee simple title to the "Barrons" farm, and that they have, there-
fore, a fee simple title to that portion of the same involved in this
suit; that the defendants deny their title, and claim that they own
the "Barrons" farm under the will of their grandfather, D. C.
Barraud, Senior, subject to the life estate therein of their father,
D. C. Barraud, Jr., and insist that William H. Turner only ac-
quired title in the suit of *Barraud* v. *Marshall,* to the life estate
of their father.   Complainants further allege that they desire
to sell the land in question, and that the claim of defendants is
a cloud upon their title, seriously impairing its value, which a
court of equity will remove.

To this bill the five Barraud defendants, three adults and two
infants by their guardian, *ad litem,* file answers.   These answers
deny the material allegations of the bill, and fully set out the
case of the defendants, and exhibit as a part thereof the entire

record of the suit of *Barraud* v. *Marshall.* The defendants deny that the complainants own title to the land in fee, but aver that they only own the life estate therein of their father, D. C. Barraud; that under the pleadings in the suit of *Barraud* v. *Marshall,* the court had no power to sell the remainder in fee, to which they were entitled under the will of their ancestor, the elder Barraud; that the defendant, P. St. Geo. Barraud, who, alone of the appellees, was *in esse* at the time of the institution of the suit of *Barraud* v. *Marshall,* was never, in any way known to the law, made a party to the suit of *Barraud* v. *Marshall,* and that no one of the five children of D. C. Barraud were ever before the court in that case, and could not, therefore, be bound by the decrees therein. The defendants ask that their answers be treated as cross-bills and pray that all of the proceedings in *Barraud* v. *Marshall,* in so far as such proceedings affect their rights as owners of a contingent remainder in fee in and to the tract of land known as "Barrons" farm, be declared to be void *ab initio;* that the title held or claimed by the complainants be declared to be a title during the life of D. C. Barraud, and no longer, with remainder in fee to the defendants, or such of them as shall survive their father, D. C. Barraud, who is now living.

This cause was regularly matured upon the original bill and the cross-bills, and, in September, 1902, the Circuit Court for Norfolk county rendered the decree appealed from, holding among other things, that P. St. Geo. Barraud was never made a party defendant to the suit of *Barraud* v. *Marshall;* that no guardian *ad litem* was appointed for him; that no jurisdiction was ever acquired over him in that suit; and that all the decrees therein, so far as they purport to affect P. St. Geo. Barraud and those claimed to be represented by him, were null and void.

It is apparent that the case now before us involves a collateral attack by the appellees upon the decrees in the suit of *Barraud*

v. *Marshall,* in so far as those decrees undertake to bind or affect them. The record in the case of *Barraud* v. *Marshall* is replete with errors and irregularities, but for such errors and irregularities the proceedings therein cannot be successfully attacked collaterally. It is an established rule, founded in wisdom, and necessary to the repose and well being of society, that "a superior court of general jurisdiction, proceeding within the general scope of its powers, is presumed to act rightly. All intendments of law in such cases are in favor of its acts. It is presumed to have jurisdiction to give the judgments it renders until the contrary appears. And this presumption embraces jurisdiction, not only of the cause or subject matter of the action in which the judgment is given, but of the parties also. The former will generally appear from the character of the judgment, and will be determined by the law creating the court or prescribing its general powers. The latter should regularly appear by evidence in the record of service of process upon the defendant, or his appearance in the action. But when the former exists the latter will be presumed. This is familiar law and is asserted by all of the adjudged cases." *Parker* v. *McCoy,* 10 Gratt. 594; *Pennybacker* v. *Switzer,* 75 Va. 671; *Smith* v. *Henkle,* 81 Va. 524; *Lemmon* v. *Herbert,* 92 Va. 653, 24 S. E. 249; *Galpin* v. *Page,* 18 Wallace, 350, 21 L. Ed. 959. In the last-mentioned case, from which the foregoing statement of the law is taken, Mr. Justice Field further says: "But the presumptions which the law implies in support of the judgments of superior courts of general jurisdiction only arise with respect to jurisdictional facts, concerning which the record is silent. Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed, or the averment is made. When, therefore, the record states the evidence, or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on

that point, and it will not be presumed that there was other
or different evidence respecting the fact, or that the fact was
otherwise than as averred. If, for example, it appears from
the return of the officer, or the proof of service contained in the
record, that the summons was served at a particular place, and
there is no averment of any other service, it will not be presumed
that service was also made at another and different place; or,
if it appears in like manner that the service was made upon a
person other than the defendant, it will not be presumed, in the
silence of the record, that it was made upon the defendant also.
Were not this so, it would never be possible to attack collaterally
the judgment of a superior court, although a want of jurisdic-
tion might be apparent upon its face. The answer to the at-
tack would always be that, notwithstanding the evidence or the
averment, the necessary facts to support the judgment are pre-
sumed."

While these salutary principles should not be lost sight of, it
must also be remembered that no judicial proceeding can de-
prive a man of any part of his property without giving him an
opportunity to be heard, and if judgment is rendered against
him without such opportunity to be heard, it is absolutely void.

In the case of *Underwood* v. *McVeigh,* 23 Gratt. 409, Judge
Christian says: "The authorities on this point are overwhelm-
ing, and the decisions of all the tribunals of every country where
an enlightened jurisprudence prevails are all one way. It lies
at the very foundation of justice that every person who is to be
affected by an adjudication should have the opportunity of
being heard in defence, both in repelling the allegations of fact,
and upon the matter of law; and no sentence of any court is en-
titled to the least respect in any other court, or elsewhere, when
it has been pronounced *ex parte,* and without opportunity of
defence."

The only method known to our law for bringing an infant
before a court is by guardian *ad litem,* who is appointed to con-

duct the defence of the infant, who has no discretion to select
an attorney to represent him.    "So necessary is the appointment
of a guardian *ad litem* esteemed, that although the process
against an infant is issued and executed against him just as
against an adult, and the declaration or bill setting forth the
complaint is framed and filed in like manner, yet, after the
declaration or bill is filed, no rule or any proceeding whatever
can be had lawfully until a guardian is designated; and any
step that is taken will be void as to the infant." 1 Minor's Inst.
(2d. Ed.), p. 432.

In the interest of the infant, it is provided by statute that
no "judgment or decree shall be stayed or reversed for the ap-
pearance of either party being under the age of twenty-one
years, by attorney, if the verdict (when there is one), or the
judgment or decree, be for him, and not to his prejudice."    V.
C. (1873), ch. 177, sec. 3.

The question now to be determined is:    Did the court, in the
case of *Barraud* v. *Marshall,* obtain jurisdiction over the ap-
pellees or any of them by the appointment of a guardian *ad
litem?*

At the time of the institution of that suit, the appellee, P.
St. Geo. Barraud, was four years old, and was the only child of
D. C. Barraud then living.    In 1878, when the sale of their
interest in the "Barrons" farm was made to William H. Turner,
the appellees, St. Julian Barraud and Myra Rosa Barraud, were
also *in esse,* the former being then three years old and the latter
six months old.    The two remaining appellees were born sub-
sequently to the proceedings we are now considering.    It is
conceded that the appellees were not before the court by the
"virtual representation" of their father, the life tenant.    In
the nature of things they could not be, as his interest was hostile
to theirs, as shown by the bill.    Nor is it contended that a guar-
dian *ad litem* was ever appointed for any of these infants except
P. St. Geo. Barraud.    It is, however, insisted that he "virtually

represented" his brothers and sisters. Without stopping to consider whether or not, under the doctrine of "virtual representation," P. St. Geo. Barraud could be said to represent his brother and sister who were in being when the sale was made, we will proceed at once to the enquiry, whether or not a guardian *ad litem* for P. St. Geo. Barraud was ever appointed or recognized by the court.

The bill in the cause of *Barraud* v. *Marshall,* in its recital, states that P. St. Geo. Barraud is the only child of the complainant, D. C. Barraud, and in its prayer asks that he be made a party defendant. The prayer of the bill also asks that Myra W. Barraud, an infant cousin of the appellees, and five infant Hanson children, be made parties defendant (these five last-named infants will, for brevity, be hereinafter referred to as the "Hanson children"), and asks that a guardian *ad litem* may be appointed to defend the infants named.

The first step taken in the cause of *Barraud* v. *Marshall* was the written memorandum of suit made by the plaintiff's counsel, in which all the names of the plaintiffs and defendants are set forth, including the five infant Hanson children; but in this memorandum of suit the name of P. St. Geo. Barraud does not appear. To this memorandum of suit is appended this further memorandum by plaintiffs' counsel: "Appoint W. A. Todd guardian *ad litem* for the infant defendants." The five Hanson children being the only infant defendants mentioned in connection with the suit up to that time, they were the only "infant defendants" who could possibly have been referred to in the memorandum directing the appointment of a guardian *ad litem*. The memorandum of suit is the chart by which the clerk is to be guided in maturing the cause for hearing, so far as parties are concerned. Accordingly, the subpoena following the memorandum of suit was issued against all the defendants by name, including the five infant Hanson children, and the name of P. St. Geo. Barraud does not appear therein. In the entry by the

clerk of the case on the rule docket, he set forth the names of all the plaintiffs, and each of the defendants, which was necessary in order that he might take the rules against and mature the case as to each defendant. The defendants so set forth on the rule docket included the five infant Hanson children, but did not mention the name of P. St. Geo. Barraud. The next step taken was the filing of the bill at the August rules, in which the name of P. St. Geo. Barraud appears in the cause for the first time; he being named therein, as already seen, as a party defendant. The filing of the bill was noted on the rule docket, and at the same rules the docket shows the following entry: "W. A. Todd appointed guardian *ad litem* to infant defendants." Appellants contend that the words "infant defendants" here used refer to the infant defendants named in the bill, and not those named in the memorandum for suit, in the subpoena, and on the rule docket; that inasmuch as it is necessary for one to be made a defendant by the bill in order to be a party to the suit, it is to be presumed that the clerk looked at the bill to ascertain who the infant defendants were, and that in appointing "W. A. Todd guardian *ad litem* to infant defendants" he had in mind those named in the bill. This contention is not tenable. It is not the duty of the clerk to read the bill. That pleading is addressed to the judge, and not to the clerk. As already seen, the clerk's chart is the memorandum of suit made by counsel for the plaintiff, and it is his duty in issuing processes, appointing guardians *ad litem,* and maturing cases, to follow the written instructions of the plaintiffs' counsel in the memorandum for suit, and not to be attempting to reconcile differences between the bill and those instructions. Any such differences would be the fault of the plaintiff, and not that of the clerk. It cannot be presumed that the clerk read the bill when it was not his duty to do so, but it must be presumed that he performed his duty, and that in appointing "W. A. Todd guardian *ad litem* to infant defendants" he had reference alone to those infant defendants

named in the memorandum for suit, in the subpoena issued by him, and entered by him as defendants on the rule docket in his office. These are official records, and are presumed to show accurately what the clerk has done in the matter of maturing the case as to parties. *Galpin* v. *Page, supra,* 366.

The answer filed, a formal paper of a few lines, purports to be the answer of the five infant Hanson children, and of the infant, P. St. Geo. Barraud, by Westwood A. Tood, their guardian *ad litem.* It has been shown that W. A. Todd had never been appointed, so far as appears from the record, guardian *ad litem* for P. St. Geo. Barraud, and his assuming in this answer, to act as such, cannot make him so, unless the court afterwards recognized and treated him as such.

The first decree in the cause of *Barraud* v. *Marshall* is dated October 7, 1894. It brings the cause on to be heard upon the bill taken for confessed as to some of the defendants, upon the answers of others, and upon the answer of the infant defendants, by their guardian *ad litem,* with general replication to the answers, and upon the exhibits filed. As already seen, no guardian *ad litem* had been appointed for P. St. Geo. Barraud, and the case at the time of this decree, so far as infants were concerned, had only been matured as to the five infant Hanson children who were named in the memorandum for suit, in the subpoena, and upon the clerk's rule docket. P. St. Geo. Barraud not having been at this time made a party it cannot be affirmed or presumed that the court, by the use of the words "infant defendants," meant any other infant defendants than those named in the subpoena and upon the rule docket, as to whom the cause was then matured, or intended its action in that regard as a recognition by it of the answer in question as the answer of any other person than parties to the suit. *Galpin* v. *Page, supra.*

The view that the court did not intend to include in the expression "infant defendants," P. St. Geo. Barraud, who was

not then a party to the suit, is greatly strengthened, if not con-
cluded, by the pregnant fact that in the caption to this first de-
cree, which is as much a part of the decree as any other part of
it, the name of each plaintiff and defendant is set forth, *in ex-
tenso,* by the court, and the names of the defendants so set forth
correspond with those named in the memorandum for suit, in
the subpoena, and in the rule docket. The infant defendants
thus named and set forth in the caption of its decree are the five
infant Hanson children; the name of P. St. Geo. Barraud not
being mentioned, either in the caption or in the body of the
decree. It further appears that the names of each plaintiff and
each defendant, as disclosed by the memorandum for suit, the
subpoena and the rule docket, are set forth at length in every
subsequent decree in the cause, except four unimportant ones,
and that in each instance the five infant Hanson children are
named as the infant defendants, and the name of P. St. Geo.
Barraud does not once appear in the caption or the body of a
single decree.

Under these circumstances it cannot be doubted that when the
court referred in its decree to *"infant defendants"* it had refer-
ence to and intended only to include the five infant Hanson
children immediately before set forth by name in the caption
of its decree, who had been named in the memorandum for suit,
the subpoena, and in the rule docket, as to whom the cause had
then been properly matured, and did not intend to enlarge or
extend the operation of those records by including another in-
fant who was not then. a party to the suit. Nowhere in the
record do we find that W. A. Todd was ever recognized or treated
by the court as the guardian *ad litem* of P. St. Geo. Barraud.
On the contrary, any such recognition is excluded by the facts
appearing of record. *Myers* v. *Myers, &c.,* 6 W. Va. 369. The
only mention of the name of P. St. Geo. Barraud in the entire
record is, as we have seen, in the bill, and in the caption of the
answer of a guardian *ad litem* appointed, as shown, for the five

infant Hanson children, whose interests were, as appears from the record, antagonistic to those of P. St. Geo. Barraud.

It is contended by the appellants that one cannot be a party to a suit unless named in the bill. *Mosely* v. *Cocke,* 7 Leigh, 224. This is true, but for much stronger reasons, merely naming him as defendant in the bill is not sufficient. As already pointed out, he must be brought within the jurisdiction of the court by citation, voluntary appearance, legal representation, or by some means recognized by the law as sufficient. He must have the opportunity of being heard. *McVeigh* v. *Underwood, supra; DeWolf* v. *Mallet,* 3 Dana, 214; *Estil* v. *Clay,* 2 A. K. Marshall, 497. If, however, it were conceded that P. St. Geo. Barraud had been made a party, by guardian *ad litem,* to the cause of *Barraud* v. *Marshall,* the result would still be the same, because under the pleadings therein a sale of the remainder interest in the "Barrons" farm was foreign to the object of that suit. The suit was not, as suggested, for the partition of the "Barrons" farm. Under the will of the elder Barraud the "Barrons" farm was made the subject of a specific devise; the life estate therein being given to D. C. Barraud, Jr., and the remainder to the issue of the life tenant. Each owned a separate estate, wholly independent of the other, and neither had any interest in the estate of the other. D. C. Barraud, Jr., owned a joint estate with others in the large residuum of his grandfather's estate, and it was this interest that he sought to subject to the payment of his debts by a partition thereof between himself and the joint owners with him. There was nothing to prevent the creditors of D. C. Barraud, Jr., from subjecting his life estate in the "Barrons" farm to the satisfaction of their liens. The object of the suit was to reach his undivided interest in the residuum of his grandfather's estate. One difficulty in the way of this consummation was the life estate therein of the widow of the elder Barraud. She, however, united in the suit in order to signify thereby her consent to a partition of the

*o*

residuum forthwith among those entitled thereto, regardless of
her life estate therein.    The bill in the suit of *Barraud* v. *Mar-
shall* sets forth that the plaintiff, D. C. Barraud, Jr., claimed
the entire fee in the "Barrons" farm to the exclusion of the re-
maindermen, and prays for a construction of the will in that
respect, but there is no other prayer therein which remotely
affects the interests of the remaindermen.    The bill does not
contain the slightest suggestion that the interest of the re-
maindermen in the "Barrons" farm was subject to any charge,
nor does it contain the slightest hint that a sale of such interest
was contemplated.    So far as the pleadings show, the interest
of appellees, as remaindermen, in the "Barrons" farm was in
no way involved.    There was nothing in the bill to which they
could have responded, except the charge that they did not have
a remainder in the "Barrons" farm.    This charge was so
groundless in view of the plain language of the will that its
decision could have been safely left to the court without answer.
The court, however, expressly declined to pass upon that ques-
tion, went beyond any matter submitted to it by the pleadings,
and decreed a sale of the remainder in the "Barrons" farm, to-
gether with the life estate.    By this action it exceeded its juris-
diction.    It is elementary that no court can travel outside the
controversy presented to it, to touch other rights or relations
not involved.    1 Black on Judgments, sec. 1, p. 2.    At sec.
242, *et seq.,* the same author says: "Besides jurisdiction of
the person of the defendant, and of the general subject matter
of the action, it is necessary to the validity of a judgment that
the court should have had jurisdiction of the precise question
which its judgment assumes to decide, or of the particular
remedy or relief which it assumes to grant.    In other words, a
judgment which passes upon matters entirely outside of the is-
sue raised in the record is, so far, invalid.    Jurisdiction may
be defined to be the right to adjudicate concerning the subject
matter in a given case.    To constitute this, there are three es-

sentials:  First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the point decided must be, in substance and effect, within the issue."

In view of these well settled principles, the action of the court in selling, under the circumstances disclosed by the record, the remainder estate of the appellees in the "Barrons" farm, was in excess of its jurisdiction and contrary to the establish law. *Mosely* v. *Cocke,* 7 Leigh, 224-6; *Wade* v. *Hancock,* 76 Va. 625; *Seamster* v. *Blackstone,* 83 Va. 232-4, 2 S. E. 36, 5 Am. St. 262; *Anthony* v. *Kasey,* 83 Va. 338, 5 S. E. 176, 5 Am. St. 277; *Bigelow* v. *Forrest,* 9 Wall. 351, 19 L. Ed. 696; *Windsor* v. *McVeigh,* 93 U. S. 282-3, 23 L. Ed. 914.

In conclusion, we are of opinion that no guardian *ad litem* was appointed, or recognized by the court as such, for P. St. Geo. Barraud in the case of *Barraud* v. *Marshall;* that not one of the appellees has ever had the opportunity to be heard in that case; that the action of the court in selling the remainder interest of appellees in the "Barrons" farm was beyond the scope of the pleadings, and hence in excess of its jurisdiction; and, therefore, that the decrees and other proceedings in the cause of *Barraud* v. *Marshall,* so far as they affect the rights of the appellees in and to the land in controversy, are null and void.

For these reasons the decree appealed from must be affirmed.

*Affirmed.*