𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

HUNT AND OTHERS V. KENNEDY COAL CORPORATION

September 18, 1924.

1. JUDGMENT AND DECREES—*Setting Aside Judgment of Justice of the Peace—Thirty Days after Rendition.*—An order of a justice of the peace, setting aside a judgment made more than thirty days after the rendition of the judgment, is void.

2. JUDGMENT AND DECREES—*Justices of the Peace—Warrant Against Husband and Wife—Judgment Against Husband Alone.*—Both a husband and wife were defendants in a warrant before a justice, but the husband alone was named in the title of the case as defendant and the judgment rendered was "judgment for the plaintiff."

   *Held:* There was no judgment against the wife, and the report of a master that the judgment was against both husband and wife could not make the wife a defendant in the judgment if she was not such in fact.

3. JUDGMENT AND DECREES—*Decree of Sale—Court without Jurisdiction to Make Decree.*—Where, upon a warrant against husband and wife, judgment was rendered against the husband alone and the bill to enforce the judgment set forth a judgment against the husband alone, the lower court was without jurisdiction to make any decree for the sale of the interest of the heirs of the wife in the real property mentioned in the bill, and the decree of sale to that extent was void.

4. JUDGMENT AND DECREES—*Void Judgment—Collateral Attack.*—A void judgment or decree is simply a nullity. It may be assailed directly or indirectly, anywhere, at any time, and in any way.

Appeal from a decree of the Circuit Court of Russell county. Decree for defendant. Complainants appeal.

*Reversed.*

The opinion states the case.

*A. T. Griffith,* for the appellants.

*Burns & Kidd, Greever & Gillespie,* and *Bird & Lively,* for the appellee.

Burks, J., delivered the opinion of the court.

T. J. Hunt and Eunice, his wife, acquired title to a lot in Russell county by deed from W. J. Combs and wife, dated June 27, 1905. A few years thereafter Eunice Hunt died intestate, leaving surviving her the said T. J. Hunt, her husband, and six infant children. The grantees were joint tenants of the property, and, upon the death of Eunice, her husband became entitled, as tenant by the curtesy, to an estate for his life in her one-half of the property.

In November, 1901, John E. Davis sued out a warrant before a justice of the peace against Thomas Hunt and Eunice Hunt, "for damages to property for this that the said Thomas Hunt and Eunice Hunt did hold possession of a house and cultivate a piece of land and refuse to give possession of the same to my assigns for a period of fourteen months." At the hearing, the justice, for some reason not disclosed by the record, gave no judgment against Eunice Hunt, but gave judgment in favor of the plaintiff against the defendant, T. J. Hunt, for $50.00 and the costs, which judgment he subsequently set aside. The form of the judgment and the order setting it aside were as follows:
"J. E. Davis

v.

"T. J. Hunt.

"At H. Honaker's, December 23, 1901. Judgment for plaintiff for the sum of $50.00 and $2.00 for costs.

"Given under my hand 23, 1901.

"H. Honaker, J. P."

"T. J. Hunt having prayed a new trial of the within case to be heard before Squire Mutter at Swords Creek on the 1st day of February, 1902, I have granted him a new trial this January 25, 1902.

"H. HONAKER, J. P."

[1] The order setting aside the judgment was made more than thirty days after the rendition of the judgment and was therefore void, and need not be further noticed.

In 1908, John E. Davis, the plaintiff in the above mentioned judgment, filed his bill against T. J. Hunt and the infant heirs of Eunice Hunt and others, seeking the enforcement of the judgment aforesaid. In this bill he did not claim any judgment against Eunice Hunt, but described the judgment as "a judgment against T. J. Hunt" alone, and filed an abstract of the judgment as an exhibit with his bill, which abstract is as follows: "*John E. Davis* v. *T. J. Hunt*, 1901, December 23, judgment before H. Honaker, a justice of the peace, for the sum of $50.00 and $7.50 costs," which judgment appears to have been docketed January 4, 1904. The bill then charges that "T. J. Hunt is seized and possessed in fee of a one-half interest" in the lot aforesaid conveyed to Hunt and wife; that the wife had died leaving issue surviving her; that Hunt was entitled to an estate by the curtesy in his wife's half of the lot; and that "the rents and profits of the said real estate will not satisfy said judgment within five years."

The infant heirs of the wife and others were made parties defendants. The bill contains the usual prayers for process, and accounts, if necessary, and that "said real estate" be subjected by sale or renting to the payment of complainant's judgment.

During the progress of the case, there was an order of reference to a master to ascertain the liens against the "lands in the bill and pleadings mentioned" and their relative priorities, if any, and the lands owned by the *defendant* subject to the same, and the annual rental value thereof. The master reported under the title of "the following judgments against T. J. Hunt," the judgment of the complainant as follows: "*John E. Davis* v. *T. J. Hunt and Eunice Hunt, his wife*, 1901, December 23, $50.00, interest from December 23, 1901, and costs $7.50.

As to land owned by the defendant, the master reported:

"Your commissioner reports that the said T. J. Hunt owns at this time a one-half undivided interest in a plot of ground in Swords Creek, Russell county, Virginia, the size of which he cannot ascertain from the records, but which is described in deed of W. J. Combs and wife to T. J. Hunt and Eunice Hunt, recorded in D. B. 40, page 115. The rental value of this tract your commissioner reports will not be sufficient to pay off judgment liens reported herein in five years."

There was no exception to the master's report affecting these matters, and it was confirmed; and a decree entered that, unless the *defendant or some one for him* pay the judgments declared to be liens on his lands within thirty days, a commissioner designated for the purpose proceed to "sell the said land in the bill mentioned to the highest bidder," upon the terms set forth in the decree. The commissioner thereafter proceeded to sell the whole lot, reported the sale to the court, which confirmed it, and a deed thereto was made to a purchaser under whom the appellee claims title.

The deed from the commissioner to the purchaser

was submitted to and approved by the court, and describes the property conveyed as follows: "All that certain tract of land situated on the waters of Swords creek, Russell county, Virginia, being the land conveyed from W. J. Combs and wife to T. J. Hunt and Eunice Hunt, bounded as follows:"

The instant suit is a suit by the heirs of Eunice Hunt, one of whom is still an infant, against the appellee for a partition of the lot aforesaid. The estate by the curtesy of their father having fallen in by reason of his death, they claim a half interest in said lot. The entire record of the suit of John E. Davis against T. J. Hunt is made a part of the record of this suit. The trial court dismissed the bill at the complainant's costs.

The foregoing recital of facts from the case of *Davis* v. *Hunt* leaves no room to doubt that the whole lot in controversy, and not merely the interest of T. J. Hunt therein, was sold and conveyed under the proceedings in that case. But whether or not the court had jurisdiction to decree such sale is another question.

A number of questions have been ably discussed before us, both orally and on the briefs, but back of these there is a question which, if decided adversely to the appellee, renders it unnecessary to consider the other questions discussed. That question is, was any judgment ever rendered in favor of John E. Davis against Eunice Hunt?

In the bill filed by Davis to enforce his judgment against T. J. Hunt, he does not claim any judgment against Eunice Hunt. The lien sought to be enforced is thus described in his bill:

"(1) That on the 23rd day of December, 1901, he recovered before H. Honaker, a justice of the peace for the said county of Russell, a judgment against T.

J. Hunt, of the said county, for the sum of $50.00, with interest thereon from the 28th day of November, 1901, until paid and $7.50 costs, and that the said judgment was duly docketed in the clerk's office of the said county on the 14th day of July, 1904. An abstract of which is herewith filed marked 'Exhibit A' and made a part of this bill.''

The exhibit referred to has been set out in the foregoing statement. The case is entitled *"John E. Davis v. T. J. Hunt,"* and the language of the judgment is "1901, December 23, judgment for plaintiff for the sum of $50.00 and $2.00 for costs." This is certainly no judgment against Eunice Hunt. The whole record of the chancery suit of *Davis* v. *Hunt* has been made a part of the record in the instant case, and from that record we see that the "original judgment" was founded on a warrant issued by a justice of the peace against Thomas Hunt and Eunice Hunt, but when judgment was entered it was against T. J. Hunt alone. The warrant and the judgment thereon were as follows:

*"Exhibit, Original Judgment.*

"Virginia.

"County of Russell, to-wit:

"To any sheriff or constable of said county:

"You are hereby commanded to summon Thomas Hunt and Eunice Hunt, if to be found in your county, to appear at my house in said county on the 7th day of December, 1901, at 1 o'clock p. m. before me or some other justice of said county as may then be there to try this warrant, to answer the claim of John E. Davis to damages, to-wit: For the sum of $50.00 due for damages to property, for this that the said Thomas and Eunice Hunt did hold possession of a house and

cultivate a piece of land and refused to give possession of same to my assigns for a period of fourteen months from the 1st day of March, 1898, until May, 1899, to the great damage of the said John E. Davis, to-wit: For the sum of $50.00, and then and there make return this warrant.

"Given under my hand and seal this 28th day of November, 1901.

> "Jonathan Boyd, J. P.   (Seal)
> "J. P. Cost_____   .50
> "Coms. Cost_____   1.00
> "Jonathan Boyd_____   .50
> _____
> "$2.00"

"1901.   December 2

"Executed in full.

"C. W. Hunt D. S. for H. C.   *   *   *   S. R. C."

"J. E. Davis

v.

"T. J. Hunt.

"At H. Honaker's, December 23, 1901.

"Judgment for plaintiff for the sum of $50.00 and $2.00 for costs.

"Given under my hand 23-1901.

> "H. Honaker, J. P."

[2] Both plaintiff and defendant are named in the judgment, and Eunice Hunt is not mentioned as a defendant to the judgment, although she was a defendant in the warrant. The justice may, and doubtless did, have good reason for not giving judgment against her. Several reasons suggest themselves, but it is not material to mention them, or to inquire into them. The fact remains that the justice mentioned J. E. Davis as plaintiff and T. J. Hunt as defendant, and renders

"judgment for the plaintiff" which could only mean against T. J. Hunt. This was not a judgment against Eunice Hunt. It is significant also that when a new trial was applied for, it was by T. J. Hunt alone.

When the master reported "the judgment described in the bill in favor of the complainant, Jno. E. Davis," as a judgment against both T. J. Hunt and Eunice, his wife, that was simply his construction of the language used in the judgment which we have seen was unwarranted. His construction could not make Eunice Hunt a defendant in the judgment if she was not such in fact.

The brief of the appellee seeks to explain the allegation of the bill in *Davis* v. *Hunt*, setting out a judgment against T. J. Hunt only, as "the mere mistake of the draftsman of the bill in that suit in describing the judgment as against only one defendant, when it was against both defendants," and "the pleader being misled, no doubt by the omission by the clerk of Eunice Hunt's name in docketing the judgment." A better explanation would have been that there was no judgment against Eunice.

[3] The bill set forth a judgment against T. J. Hunt alone, and filed as an exhibit to prove the judgment an abstract of a judgment against T. J. Hunt only. It sets forth the land of T. J. Hunt that was liable to the lien of the judgment. It makes no reference to any judgment against Eunice Hunt, or to any real estate belonging to her that was in any way liable for complainant's debt. Her personal representative was not made a party to the suit, and no relief was asked against her heirs. They were made parties doubtless because they were owners of one-half of the land subject to his curtesy. The order of reference directed an inquiry as to the land owned by the defendant

liable for the judgments, and the decree for the sale
directed the sale unless the *defendant* or some one for
*him* paid off the judgments.    When the purchase
money from the sale of the land was applied to the
payment of the judgment liens, the whole was applied
as the proceeds of the sale of the land of T. J. Hunt,
although it is now claimed that Davis alone had a
judgment against Eunice Hunt, and one-half of the
land belonged to her heirs, being subject to his curtesy.
The whole proceeding shows that the suit was for the
purpose of subjecting the real estate of T. J. Hunt
alone to the payment of the liens.    Nor could the
bill have been so amended as to have made the suit
one also for the payment of the debts of Eunice Hunt.

Upon the facts stated, the circuit court was without
jurisdiction to make any decree for the sale of the in-
terest of the heirs of Eunice Hunt in one-half of the
lot in the bill mentioned.    As said in *Jeffries* v. *Jeffries*,
123 Va. 147, 152-3, 96 S. E. 197, 198: "This interest
is in no way assailed by the bill, and they are un-
affected by any decree that has been, or could have
been, made in the case, in its then condition, affecting
their interest under the deed from James B. Jeffries
to his wife.    They could not, with propriety, have been
made parties defendants to that suit, otherwise than
as heirs of James P. Jeffries, without so amending the
bill as to set out their interest under said deed.    Neither
the *scire facias* nor the order of publication attempted
to accomplish this result, nor could they have been
effectual to do so.    The order of publication was
simply a process to bring them in to answer the charges
made in the bill.    It could not call upon them to
answer statements made in the evidence.    If, in answer
to this process, they had inspected the bill, they would
have found nothing in it that could in any way have

affected their interest acquired under the deed from James P. Jeffries to his wife, and no decree affecting such interest would have been binding upon them. A person cannot be made a party by simply naming him as a defendant and serving him with process. The bill must contain averments showing some cause for relief against him else he is no party to the litigation. *R. D. Johnson Milling Co.* v. *Read,* 76 W. Va. 557, 85 S. E. 726; *Moseley* v. *Cocke,* 7 Leigh (34 Va.) 224; *Gurnee* v. *Bausemer,* 80 Va. 867, and cases cited." See also *Turner* v. *Barraud,* 102 Va. 324, 46 S. E. 318.

The court being without jurisdiction to decree the sale of the interest of said heirs, the decree to this extent was void.

[4] A void judgment or decree is simply a nullity. It may be assailed directly or indirectly, anywhere, at any time, and in any way. *Adkins* v. *Richmond,* 98 Va. 91, 34 S. E. 967, 47 L. R. A. 583, 81 Am. St. Rep. 705; *Pine* v. *Commonwealth,* 121 Va. 812, 821, 93 S. E. 652.

It results from what has been said that the complainants and the appellee are tenants in common in the lot of land in controversy, and had the right to maintain their suit for the partition thereof.

It is unnecessary to discuss any other questions raised in this case.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings not in conflict with the foregoing opinion.

*Reversed.*