# Richmond

## J. B. HUBBARD, ET AL. V. THOMAS B. DAVIS, ET AL.

April 26, 1943.

Record No. 2644.

Present, All the Justices.

The opinion states the case.

*Griffith & Greenwood,* for the appellants.

*Burns & Lively,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Wm. A. Kilgore died in the year 1881, leaving a will, in which he made the following provision for the disposition of his real estate:

"It is my will, that my real estate, in the event that my wife, Octavia E., does not want to live on it, be rented to the highest bidder by my executor and the proceeds thereof used for the support of my wife, Octavia E., and in the

event that Mary Monte Wysor outlives my wife Octavia E. Kilgore that she have the interest on the money and rent of farm in the same manner as above described for my wife Octavia E. Kilgore and if she, Mary Monte Wysor marry, and leave children at her death, they to have the rest and residue of my estate to be equally divided between them, but in the event there are no such heirs, it is my will that the heirs of my brother, James H. Kilgore have the rest and residue of my estate at the death of the aforesaid Mary Monte Wysor."

Octavia E. Kilgore, who subsequently married James B. Johnson, died on February 24, 1924. Mary Monte Wysor, who is the same person as Mary Myrtle Wysor Davis, survived her. Mary Monte Wysor as she was called by her uncle, Wm. A. Kilgore, was a daughter of the late B. J. Wysor and his first wife, Patty Riley Wysor, deceased. Mrs. Patty Wysor was a half-sister of Octavia E. Kilgore, nee Riley, the wife of Wm. A. Kilgore, and died when her child was about ten months of age.

Wm. A. Kilgore and his wife had no children. Immediately after the death of Mrs. Patty Kilgore, they took Mary Monte Wysor to live with them as a member of their family. She thereafter lived in the Kilgore home about a mile and a half south of Honaker, Russell County, Virginia, on what was known as the New Garden Road, until sometime after Wm. A. Kilgore died.

On March 6, 1885, William Warder, et al., conveyed to "Mary Monty Wysor, devisee of the said Wm. Kilgore, dec'd., a certain tract or parcel of land lying in Russell County, in New Garden, adjoining the other lands of said Wm. A. Kilgore and containing 13¼ acres, more or less," described further by metes and bounds, to be held by the said "Mary Monty Wysor devisee, subject in all respects to the provisions of the Will of the said Wm. A. Kilgore, dec'd., forever."

In 1891, B. J. Wysor as guardian of his infant daughter, Mertie Wysor (Mary Monte Wysor), instituted a suit in the Circuit Court of Russell County, alleging that he had

"sold to P. L. Johnson the reversionary interest of his said ward and daughter in a tract of about thirty acres of land, which land was devised to his said daughter by her uncle W. A. Kilgore, subject to the life estate of the wife of W. A. Kilgore; said land lies in New Garden, Russell County, Virginia, and is bounded by the lands of L. Finney, P. L. Johnson, and the heirs of E. A. Kindrick and is known as the Wm. Kilgore land, being the whole tract of land whereon Wm. Kilgore in his lifetime resided." He further alleged that "This reversionary interest in the aforesaid tract of land" was "the only land or estate owned by his said ward in the neighborhood" and that it was subject to the life estate of Octavia E. Kilgore; that it would be to his. ward's best interest to sell "said residuary estate in said land" to P. L. Johnson for the sum of $300 to secure funds for her proper education and training; that the interest of no one would be violated by the sale; and that he would be the sole heir-at-law of his ward should she die under age without issue. Miss Wysor being under fourteen years of age, a guardian *ad litem* was appointed for her, by whom she answered the bill, submitting her interest to the protection of the court. Two witnesses testified by depositions that they knew the "reversionary interest" of Miss Wysor in the land and thought it would be to her advantage that the sale be confirmed.

On August 8, 1891, it was decreed that the sale of "the land mentioned in the bill" be approved and confirmed, and that the guardian proceed to collect the purchase money and report his action to the court. By its decree of August 4, 1892, the court appointed E. S. Finney, special commissioner, and directed him to convey to P. L. Johnson "the land mentioned in the bill." On August 14, 1892, E. S. Finney, special commissioner, made, executed, and delivered to P. L. Johnson a deed, purporting to convey to the grantee, pursuant to the last mentioned decree, a parcel of land described as "lying in Russell County, Va., in New Garden District, and known as the Wm. A. Kilgore land

containing thirty acres and bounded by the lands of L. Finney and the heirs of E. A. Kindrick."

P. L. Johnson owned, jointly with L. Finney, certain other lands adjoining the Kilgore land. After receipt of the above deed, Johnson and Finney made a deed of partition, whereby Finney was allotted the eastern half of the Kilgore land, Johnson retaining the western half.

P. L. Johnson, subsequent to the conveyance of a portion of the land to Finney, executed a deed of trust on certain of his lands, including all of the Kilgore land, to Z. N. Slaughter, trustee, to secure a certain debt. The land secured by the deed of trust, excepting that portion covered in the prior conveyance to L. Finney, was sold in a chancery proceeding to V. B. Gilmer. Gilmer conveyed it to Thomas J. Harris, and Harris conveyed it to Simon Dotson, one of the defendants.

L. Finney conveyed certain other lands owned by him, together with the Kilgore land purchased from P. L. Johnson, to M. C. Clark. Clark conveyed the land to E. S. and Malissa Finney, and the latter, in turn, conveyed it to Jesse B. Hubbard, who subsequently conveyed it to James B. Hubbard and the remaining defendants in this case.

The defendants are in possession of the land covered by the above deeds and claim good and sufficient title thereto.

Thomas B. Davis, C. H. Davis, Edgar Gilmer, Viola Boyd, Birdie Van Dyke, Narcie Suvier, Marshy Davis, and Mary B. Frazee, the only children of Mrs. Mary Myrtle Wysor Davis (Mary Monte Wysor), instituted this suit in September, 1939, against J. B. Hubbard, Garnett Hubbard, Myrtle Hubbard, Dallas Hubbard, Mollie Van Dyke, Rosa Davis, Eunice Compton, and Simon Dotson, praying for a declaratory judgment construing the above provision of the will of Wm. A. Kilgore and for a decree cancelling and annulling the deed from E. S. Finney, special commissioner, to P. L. Johnson as a cloud upon the title and interest of the complainants in the land devised to them under said will and described in said deed, and adjudicating the respective rights of the parties therein.

The defendants, after their demurrer was overruled, answered the bill denying that either the will of Wm. A. Kilgore or the deed from Finney, special commissioner, to P. L. Johnson referred to the land occupied and claimed by them, and that the title to such land was ever vested in Wm. A. Kilgore. They further alleged that they held good title by reason of adverse possession for more than ten years prior to the institution of the suit.

Voluminous testimony of many witnesses was taken by depositions and deeds and several maps were placed in evidence. The trial court construed the will and, from the evidence, located the land involved. It held that the described land had been devised by the last will and testament of Wm. A. Kilgore to Octavia E. Kilgore for her life, and then to Mary Monte Wysor Davis, with remainder upon the death of the latter to her then living children; that the defendants had not acquired title to the land by reason of their possession; that in the chancery suit of *Wysor, Guardian* v. *Mertie Wysor, et al.*, the trial court was without jurisdiction to make any sale or disposition of the said estate and remainder; that the deed of the special commissioner in the said suit insofar as it undertook to convey any estate greater than the estate for the life of Mary Monte Wysor Davis was null and void; and that the defendant, Simon Dotson, owned only an estate for the life of Mrs. Davis in a portion of the Kilgore land and the remaining defendants owned only such a life estate in the residue of that land.

The defendants assign error to the several rulings of the trial court, contending that the complainants failed to identify the lands purporting to be devised by Wm. A. Kilgore; and that even if they did identify such lands, their remainder interest therein had been legally sold and conveyed.

A review of the oral and documentary evidence will be sufficient, we think, to show that the rulings of the trial court were fully supported by the law and the facts.

John Johnson, Sr., died intestate, prior to 1865, seized and possessed of a tract of land in Russell County, Virginia, containing about 103 acres. In a written agreement by his heirs-at-law, a commission of "arbitrators" was appointed to settle his estate, and after allotting dower to his widow, Elizabeth Johnson, to apportion the residue of his land according to quality and quantity, equally between his five daughters, Rebecca Finney, Celia Riley, Jane Steele, Mary Steele, and Casby Steele. The commission made a report assigning 25 acres as dower and set apart five other portions, each described by metes and bounds, as the respective shares of the five daughters. The written agreement and the partition report filed by the arbitrators were recorded in the Clerk's Office of Russell County, on December 4, 1866. The record does not show that a plat alleged to be annexed with the report was recorded, or that the parties to the agreement or arbitrators acknowledged their signatures in writing. Subsequent deeds from the parties to whom the several portions were allotted do, however, refer to the partition report as describing their respective shares.

In 1867, and thereafter, Casby Steele, Mary Steele, and the heirs-at-law of Jane Steele and Rebecca Finney, by several deeds, conveyed their interest in a part of the Johnson lands to L. Finney.

On December 6, 1875, Hugh Riley, Charles Riley, and Louise Riley, three of the four children and heirs-at-law of Celia Riley, deceased, conveyed to Wm. A. Kilgore their interest in that portion of the land laid off to them as a share of their mother, said to contain about 11 acres, together with their interest in the parcel of land assigned to their grandmother, Elizabeth Johnson, as dower.

On July 7, 1881, Wm. A. Kilgore and Octavia E. Kilgore, his wife, conveyed to L. Finney their interest in the dower land assigned to Mrs. Johnson.

On September 11, 1886, Octavia E. Johnson, who was the same person as Octavia E. Kilgore, and her second husband, James B. Johnson, conveyed to L. Finney her one-fourth

interest in the tract of the Johnson land, which she had inherited as one of the four children of Celia Riley.

Thus for the purposes of this suit, it may be conceded that L. Finney acquired all or nearly all of the land of the late John Johnson, Sr., except the three-fourths interest of the heirs of Celia Riley, which was conveyed to Wm. A. Kilgore on December 6, 1875.

Each one of the above deeds contained a specific reference to the partition deed made by the heirs-at-law of John Johnson, Sr., recorded December 4, 1866.

The suit brought by B. J. Wysor, guardian, to sell his daughter's interest referred to it as a tract containing about 30 acres. All persons who claim under the deed of E. S. Finney, special commissioner, to P. L. Johnson are charged with knowledge of that allegation.

Several witnesses, including one who was more than ninety years of age, another who had worked for Kilgore on his land, and others who lived in the neighborhood, were able to point out the general boundaries of the Kilgore tract. Kilgore kept the land fenced in and lived upon it until his death. It was always known and referred to in the neighborhood as the "Kilgore Place." Mrs. Mary Monte Wysor Davis, now more than sixty-five years old, remembered the location of the home of her uncle quite well, the old spring on the farm, and the "muddy bend" in the road, sometimes referred to in the muniments of title. With the assistance of the old deeds and the evidence of the several witnesses, a competent civil engineer located the land, made a survey thereof, and filed a plat showing it to contain 29.783 acres, within definite lines and according to specific calls. The witnesses for the complainants were in agreement with the lines and boundaries of the plat.

The defendants seek to justify the validity of the sale and conveyance to P. L. Johnson by E. S. Finney, special commissioner, on the ground that the proceedings which authorized it were validly prosecuted under Virginia Code, 1887, section 2432, *et seq.*, and were binding on the com-

plainants. Section 2432* of the Code of 1887 authorized the sale of contingent estates under certain conditions, and the investment of the proceeds from the sale under a decree of the court for the use and benefit of the person so holding the estate, subject to the limitations of the deed or will creating the estate.

Section 2433 of the Code of 1887 provided: "No decree shall be made authorizing such sale, unless it shall be shown, by the examination of witnesses, that the interest of all persons, directly or contingently interested in such estate, will be promoted thereby; * * * ."

At the time of the institution of that suit, Mrs. Octavia E. (Kilgore) Johnson was living and Mary Monte Wysor had not come into possession of her life estate. The bill asked only for the confirmation of the sale of "the reversionary interest" of the minor. The evidence of the witnesses referred only to such "reversionary interest." What was meant by the words "reversionary interest" is not entirely clear. There is nothing in the record to show a reversion. Perhaps the word "remainder" was intended. It was not then, nor is it now, claimed that Mary Monte Wysor had a fee simple estate.

The Kilgore will was not filed as an exhibit with the bill, nor does the record show its introduction before the trial court. The bill does not set forth the limitations of the will creating the estate to be sold, nor pray for an investment of the proceeds of sale for the use and benefit

---

*"Sec. 2432. Sale of contingent estates.—When any estate, real or personal, is given by deed or will to any person, subject to a limitation contingent upon the dying of any person without heir or heirs of the body, or issue of the body, or children, or offspring, or descendant or other relative, it shall be lawful for the circuit and corporation courts, upon a bill filed by the person holding the estate subject to such limitation, in which bill all persons then living and contingently interested shall be made defendants, to decree a sale of such estate, real or personal, and to invest the proceeds. of sale under the decree of the court, for the use and benefit of the person so holding the estate, subject to the limitations of the deed or will creating the estate: *Provided however,* that the bill of the plaintiff shall set forth the facts which, in his opinion, would justify the sale of the said estate, to be verified by the affidavit of the party."

of the person holding the estate, subject to the limitations of the will creating it.

The complainants were not in being at that time and their rights were not impleaded, nor their contingent interest shown or considered, according to the record. No testimony was offered as to the effect of the sale upon the right or interest of the complainants. There were no pleadings upon which to base a decree for the sale of any interest in the land greater than that of Mary Monte Wysor, whatever her interest was. Neither under the pleadings nor under sections 2432, *et seq.* of the Code of 1887, was the trial court with jurisdiction to enter any decree which would affect the rights of the complainants as remaindermen after the death of their mother.

*Troth* v. *Robertson*, 78 Va. 46, relied on by the defendants is readily distinguishable from this case on the facts.

In *Turner* v. *Barraud*, 102 Va. 324, 46 S. E. 318, Judge Harrison said:

"It is elementary that no court can travel outside the controversy presented to it, to touch other rights or relations not involved. 1 Black on Judgments, sec. 1, p. 2. At sec. 242, *et seq.*, the same author says: 'Besides jurisdiction of the person of the defendant, and of the general subject matter of the action, it is necessary to the validity of a judgment that the court should have had jurisdiction of the precise question which its judgment assumes to decide, or of the particular remedy or relief which it assumes to grant. In other words, a judgment which passes upon matters entirely outside of the issue raised in the record is, so far, invalid.' "

It is not necessary to speculate upon the consideration or reason for the terms and limitations of the conveyance from William Warder, et al., to Mary Monte Wysor, devisee, of 13¼ acres of land, "subject in all respects to the provisions of the will of Wm. A. Kilgore." It is the title she acquired or interest she took which concerns us. In the unequivocal language of the deed, she took exactly the same

interest in the land thereby conveyed as that which was devised to her under the will of Kilgore. She thereby became the owner of 30 acres altogether, the 30 acres mentioned in the suit of *Wysor, Guardian* v. *Wysor, et al.*, subject to the provisions of her uncle's will.

The possession of the land by the defendants was not adverse to any right of possession by the complainants. The statute of limitations does not begin to run against an owner of any real estate or of his interest therein until such owner shall have the right to "make an entry on, or bring an action to recover" the land. Virginia Code, 1942, (Michie) sections 5805, *et seq.* That time has not arrived so far as the complainants are concerned. They must await the falling in of the life estate of their mother.

It is clear that substantial justice has been reached by the decree of the trial court, and that the appellants have failed to show wherein any error has been committed in these proceedings. The decree of the trial court is affirmed.

*Affirmed.*